## Silva v. City of Newport.

(Decided November 27, 1912.)

### Appeal from Campbell Circuit Court.

1.  Ordinances—Requiring Street Railroad to Provide Stool for Motormen—Validity of.—An ordinance which requires "That every street car owned and operated by any person, company or corporation maintaining a street railway within the limits of the city of Newport, shall be provided by such person, company or corporation with a stool, upon the forward platform, as a seat for the driver, or motorman or gripman or other person in control of said car," and providing a penalty for its violation, is not unreasonable or oppressive in its operation; nor was its passage by the city's board of commissioners unauthorized by law.

2.  Same—Power of Second Class Cities to Pass—Construction of Statutes.—Power to pass the ordinance is conferred upon the Board of Commissioners of a city of the second class (to which Newport belongs), by section 3058, subsection 25, Kentucky Statutes, which authorizes it: "To pass all ordinances not inconsistent with the provisions of this act or the laws of the State, as may be expedient in maintaining the peace, good government, health and welfare of the city its trade, commerce and manu-

factures." And an ordinance, like that above, which is intended to, and does, add to the comfort and safety of the employes charged with the duty of operating the cars of the street railway company, using the city's streets, must necessarily be promotive of the comfort and safety of the citizens of the municipality who become passengers on the cars. Therefore, in an important sense, the ordinance serves to promote "Good government, the health and welfare of the city," and also its "trade and commerce."

3. Same—Power to Declare Void Exists Only in Extreme Cases.—It is only in extreme cases that the power to declare a municipal ordinance, passed pursuant to legislative authority, invalid on the ground that it is unreasonable, arbitrary or oppressive, can be exercised by the courts; for it is a well recognized rule of law that where the municipal legislature has the power to act, it must be governed, not by the discretion of the courts, but by its own discretion; therefore the courts should be slow to convict it of being unreasonable in the exercise of such discretion.

L. J. CRAWFORD and L. J. CRAWFORD, JR., for appellant.

OTTO WOLFF for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

This action was instituted by the appellant, Albert Silva, a resident and taxpayer of the city of Newport, against that city and Wm. Buten, its police judge, to test the validity of the following ordinance adopted and made a law July 22, 1912, by the City's Board of Commissioners:

"An ordinance requiring stools for motormen and etc. To be provided upon all street railway cars. Be it ordained by the Board of Commissioners of Newport, Ky.:

"That every street car owned and operated by any person, company or corporation, maintaining or operating a street railway within the limits of the City of Newport, Ky., shall be provided by such person, company or corporation with a stool, upon the forward platform, as a seat for the driver or motorman or gripman or other person in control of said car.

"That each and every person, company or corporation now maintaining or operating any such street railway within the City of Newport, Ky., shall within thirty days from the passage of this ordinance, comply with the provisions, and for each day's failure so to do, each and every person, company or corporation so failing, shall, upon conviction in the police court, be fined not exceeding $100.00.

"This ordinance shall be in force and effect from and after its passage.

"Adopted by the Board of Commissioners July 22, 1912."

A demurrer was sustained to the petition as amended and appellant failing to plead further the action was dismissed at his cost. To obtain a review of the judgment manifesting these rulings he prosecutes this appeal.

The ordinance is assailed by the petition upon the grounds, First: That it is unreasonable and an unwarranted and arbitrary interference in and with the "business of all persons, companies or corporations, owning or operating street railways within the limits of the city of Newport." Second: That the Board of Commissioners of the City of Newport were without power to pass or adopt it.

Newport is a city of the second class and its power, if any it has, to pass such an ordinance as the one under consideration, is conferred by section 3058, subsections 1-20-25, Kentucky Statutes; but it mainly relies upon subsection 25, which empowers it, "to pass all such ordinances, not inconsistent with the provisions of this act or the laws of the State, as may be expedient in maintaining the peace, good government, health and welfare of the city, its trade, commerce and manufactures, and to enforce same by fines and penalties; and any enumeration of subjects and matters herein to be regulated shall not be construed as a limitation upon this general power."

In no aspect of its meaning or effect can, it be said that the ordinance is not a reasonable regulation.

In South Covington Railway Company v. Berry, 93 Ky., 43, an ordinance, which required the street railway company to have both a conductor and driver on each of its cars, was held to be a reasonable police regulation under the provision of the then existing charter of the city of Newport, which authorized its city council to pass all ordinances "that may be necessary for the due and effectual administration of right and justice in said city and for the better government thereof;" and "to cause the removal or abatement of any nuisance." Moreover, that it was no objection to such an ordinance that it contained a provision directing the police of the city, to cause any car without a driver and conductor to be returned to the stables; such removal of the cars

from the streets not being a taking of the company's property without due process of law as the company was not thereby divested of its property.

In the same case it was also held that the mere granting of a charter to operate a street railway, did not deprive the city government of the power to make reasonable regulations for the enjoyment of the privilege in such a way as would be consistent with the safety of the public.

In C. & O. Ry. Co. v. City of Maysville, 24 R., 615, the validity of an ordinance of that city compelling the railway company to erect and maintain gates at certain crossings in the city, was attacked upon the ground that it was unreasonable in its requirements, and that the city council was without power to pass it, but we rejected both these contentions and held the ordinance valid.

In L. & N. R. R. Co. v. City of Louisville 141 Ky., 131, we sustained the validity of an ordinance of the city of Louisville which fixed the grade of Roberta Avenue and directed that it be extended across the railroad track to connect with Frankfort Avenue, the grade of the latter street being three feet higher than the railroad track, upon the ground that it could not be assailed as invalid by the railroad company because it might be considered as unreasonable or as working a hardship to it in that case; and that it is only in extreme cases that the power to declare a municipal ordinance, passed pursuant to legislative authority, invalid on the ground that it is unreasonable, arbitrary or oppressive, can be exercised by the courts.

It it a well recognized rule of law that where the municipal legislature has the power to act, it must be governed, not by the discretion of the courts, but by its own discretion; for which reason, the courts should not be hasty in convicting it of being unreasonable in the exercise of it. Our meaning can be better expressed by the following excerpt from the opinion in State v. Clark, 54 Mo., 17:

"It is naked assumption to say that any matter allowed by the Legislature is against public policy. The best indications of public policy are to be found in the enactments of the Legislature. To say that such a law is of unusual tendency is disrespectful to the Legislature, who, no doubt, designed to promote the morals and health of the citizens. Whether the ordinance in ques-

tion is calculated to promote the object is a question with which the courts have no concern when the legislative will has been plainly expressed." Crowley v. Christensen, 137 U. S., 86; Ex Parte Hays, 20 L. R. A., 701; Commonwealth v. Reineke C. M. Co., 117 Ky., 885.

The attitude of the courts with respect to this question is thus expressed in L. & N. R. R. Co. v. Kentucky, 161 U. S., 667:

"Whatever is contrary to public policy or inimical to the public interest is subject to the police power of the State, and within Legislative control, and in the exercise of such power the Legislature vested with a large discretion, which, if exercised bona fide for the protection of the public, is beyond the reach of judicial inquiry."

We are also clearly of the opinion that the object of the ordinance is a proper subject for police regulation. In other words, it is within the police power of the State to protect any class of its citizens, which stands in need of such protection. And it is not wide of the mark to say that the motormen who operate street cars are in need of such protection, if, as argued by counsel for appellee, they "are required to stand so steadily and in the same position that they are subject to impaired circulation of blood vessels, swelling of the legs, varicose veins, ulcerated legs and contract diseases of the kidneys, incapacitating them for any kind of work and causing premature death."

It may also be observed that the effect of enforcing the ordinance will be to protect the traveling public, because if motormen can by the use of stools be relieved of the necessity of constantly standing upon their feet, in one position, and as well perform their work while using the stools (of which there seems to be no doubt) it would prevent the conjestion of the lower limbs, to which they seem to be peculiarly subject, and enable them in case of an emergency or accident, to be alert and competent to prevent injury to passengers on the cars.

The right of railway employes, whether engaged in operating steam or electric railways, to such protection as the ordinance contemplates, has been recognized by Congress in the enactment of the humane law, and its several amendments, commonly known as the "Employers Liability Act" which, among other things, provides that no common carrier engaged in interstate commerce shall require or permit its employes to be or remain on

duty for a longer period than sixteen consecutive hours. The application of this provision in allowing the recovery of damages for the death of an employe, engaged in interstate commerce, was approved by us in the case of St. L., I. M. & S. Ry. Co. v. McWhirters' Admx., 145 Ky., 427, and in concluding the opinion we said:

"In conclusion we are moved to say that the salutary object designed by the enactment of the statute, supra, would, in our opinion, be defeated if we should hold its provisions inapplicable to a case like the one at bar. Its aim is the protection of the lives of employes of railroad companies, and also the lives and property entrusted to the railroads as common carriers. It recognizes that there is a limit to human endurance and that hours of rest and recreation, as well as the use of good machinery and appliances, are needful to the health and safety of men engaged in the hazardous work of railroading, and that the benefits it is intended to confer, will better enable them to serve their employers and promote the ends of commerce. The application of the statute may sometimes bear harshly upon an offending railroad company, but, on the whole, their just enforcement, in all proper cases, is bound to be promotive of the public welfare." Johnson v. Southern Pacific Co., 196 U. S., 1; Schlemner v. Buffalo R. & P. Ry. Co., 205 U. S., 1; Ellis v. U. S., 206 U. S., 206; B. & O. Ry. Co. v. Interstate Commerce Commission, 221 U. S., 612; Holden v. Hardie, 169 U. S., 366; Commonwealth v. Hillside Coal Co., 109 Ky., 47; Godfrey v. Beattyville Coal Co., 101 Ky., 339; Andricus v. Pineville Coal Co. 121 Ky., 724.

Having reached the conclusion that the ordinance is not an unreasonable or oppressive exercise of the police power, the only other question to be considered is that raised by appellant's second contention; were the appellee City's Board of Commissioners, without power to pass it?

In our opinion this question must be answered in the negative. Subsection 25, section 3058, Kentucky Statutes, in unambiguous language, authorizes the Board of Commissioners, "to pass all such ordinances * * * as may be *expedient in maintaining the peace, good government, health and welfare of the city, its trade, commerce and manufacturers.*" The power here conferred is as broad as the police power of the State, as it authorizes the council or Board of Commissioners of cities of the second class to pass any ordinance which would be

promotive of any of the ends mentioned in the statute. Therefore, an ordinance like the one under consideration which is intended to, and does, add to the comfort and safety of employes charged with the duty of operating the cars of the street railway, using the city's streets, must necessarily be promotive of the comfort and safety of the citizens of the municipality, who become passengers on the cars. In this way the ordinance, it may well be said, will serve to promote, "good government, the health and welfare of the city," and also its "trade and commerce."

As said in Commonwealth v. Reineke C. M. Co., supra, "The subjects for the exercise of the police power are, first, preservation of the public health; second, preservation of the public morals; third, regulation of business enterprises; fourth, regulation of civil rights of individuals; and fifth, the general welfare and safety of the citizens. All business must be subject to reasonable regulations    *    *    *."

It cannot seriously be contended that the courts may declare a municipal ordinance invalid merely because, in their opinion, the Legislature should not have conferred the power exercised by the municipality in passing it. In order to declare the ordinance void, it must clearly appear from the language of the legislative enactment, that it does not confer the power exercised by the municipality, or that the power conferred is prohibited by the Constitution of the State.

If subsection 25 of section 3058, Kentucky Statutes, were less explicit as to the subject and matters with respect to which cities of the second class may exercise the powers it confers, the closing sentence thereof, "and any enumeration of subjects and matters herein to be regulated shall not be construed as a limitation upon this general power," would justify us in saying that the power conferred upon the municipalities is not confined to the subjects or matters therein enumerated but may be exercised by it as to others of a like character not mentioned, which may come within the general scope of the police power of the State.

Being of opinion that the ordinance is not open to the objections made to it, the judgment is affirmed. Whole court sitting.