## Kentland Coal & Coke Company v. Coleman's Guardian.

(Decided March 25, 1932.)

HARMAN, FRANCIS & HOBSON for appellant.

A. E. AUXIER for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE DIETZMAN—
Affirming.

This appeal involves the validity of chapter 146 of the Acts of 1930, now section 2150a of the Statutes. The facts involved are these: Ernest Coleman is an infant 12 years of age, who some 6 years ago, sustained a stroke of paralysis that has left him a cripple so that it will be impossible for him to earn a living by manual labor. The importance of his getting an education is apparent. His father is dead and his mother, now some 44 years of age, has no estate, and earns her living by cooking, washing, ironing, and other domestic work. The child has no estate except a half interest in the surface only of about 145 acres of mountain land worth not exceeding $1,000. On October 16, 1930, the child's uncle, P. A. Dotson, qualified as his guardian, and on November 10 following made a contract with the appellant to sell to it his ward's interest in the land above referred to for $1,000, of which $25 was to be paid in cash on the signing of the contract and the remainder was to be paid upon the entry of a valid judgment of approval of the sale by the Pike circuit court. On January 5, 1931, in strict accordance with the provisions of section 2150a of the Statutes, Dotson filed suit against his ward alleging elaborately all of the foregoing facts, describing the property, alleging the necessity of the sale of the land for the support, education, and maintenance including necessary and, indeed, indispensable, medical care of his ward, filing the title papers of his ward, a copy of his appointment as guardian and of his bond, and filing the contract made with the appellant. The child was properly summoned and a guardian ad litem for him was appointed, who made his report, was served with notice of the taking of the depositions of five witnesses, attended the taking of such depositions, and cross examined the witnesses. The facts alleged in the petition were fully proven by the evidence, and the guardian executed the bond required by section 2150a of the Statutes. The court thereupon entered judgment, adjudging that the sale made by the guardian

was advisable and the price to be obtained satisfactory, and further adjudging the guardian full authority and power to convey to the appellant the interest of the infant in and to the land described in the petition for the consideration of $1,000 to be paid as hereinbefore set out. The appellant declining to accept the conveyance tendered it by the guardian in accordance with this judgment and to pay the balance due under the contract, the guardian asked a rule against the appellant to show cause why it should not comply with the judgment of the court. The appellant filed a response by which it undertook to justify its refusal on the ground that the judgment hereinbefore referred to was void, in that section 2150a of the Statutes is unconstitutional and void, and, further, because the proof had been taken by depositions instead of on interrogatories in accordance with the provisions of section 574 of the Civil Code of Practice. The lower court sustained a demurrer to this response, and, the appellant declining to plead further, the rule was made absolute, and the coal company has appealed.

The first question we have for determination is whether or not section 2150a of the Statutes is unconstitutional and void. It is argued that it is because it provides that the chancellor may approve a private sale of an infant's land made by his guardian upon proof which shall satisfy the chancellor "that the sale is advisable," and the price satisfactory, and after the procedural provisions of section 2150a have been complied with. It is argued that, in authorizing the chancellor to approve the sale of an infant's land by a guardian, the act furnishes no rule for the guidance of the court; the language of the statute simply being that "the sale is advisable." To quote from appellant's brief:

> "The conditions under which the land may be sold are not limited to the payment of debts providing necessities and education or reinvestment. Nor are they limited to any other given set of conditions which might appeal to the General Assembly as being beneficial to the infant. But every circuit court is left to determine for itself when such a sale is advisable and when such a sale is not advisable. Every circuit judge and every special judge may and probably will have different notions about what is advisable and this statute gives to the chancellor nothing to go by except his own individual judgment,

and, of course, the judgment of men varies widely, and it will in the end be necessary for the Court of Appeals to formulate rules defining under what conditions the sale should be approved. Our judgment is that this is a duty which should be performed by the General Assembly and that the General Assembly has no right to pass an act which can only become uniformly effective after the Court of Appeals has defined the conditions under which it is effective.''

To sustain its position, appellant cites the case of Lawrence E. Tierney Coal Co. v. Smith's Guardian, 180 Ky. 815, 203 S. W. 731, 736, 4 A. L. R. 1540, and that line of cases illustrated by the case of United States v. L. Cohen Grocer Co., 255 U. S. 81, 41 S. Ct. 298, 65 L. Ed. 516, 14 A. L. R. 1045. In the Tierney Case, it was held that an act of the Legislature which empowered a guardian to lease the coal lands of his ward for a period of time which would extend beyond the period of minority of the ward was, at least in so far as the leased period extended beyond that minority, invalid. The court, in that case, however, still recognized and upheld the right of the Legislature to enact laws providing for the sale of an infant's land for the purposes of reinvestment or for his education and maintenance. The opinion says:

''The difference between the sale of infant's land for purposes of reinvestment, or for his education and maintenance, and the leasing of it for a period of time long beyond his infancy, is so obvious that it scarcely need be distinguished. When the land of an infant is sold for purposes of reinvestment, there is only a change in the character or, perhaps, the location of his estate. The principal fund remains intact to come into his possession when he reaches his majority. If his estate is sold for his education and maintenance, during infancy, only so much of it as may be necessary for this purpose can be sold, or, if more, it will be reinvested in other property over which he will have exclusive dominion and control when the period of his minority is over. When, however, the whole estate is seized during his infancy, and at a time when he is presumed to be incapable of acting for himself, and leased for a term of years that will, under ordinary

conditions, extend far beyond the period of his life, the Legislature, through the instrumentality of the court, is assuming to exercise a guardianship for life over his affairs that is only tolerated in cases of infancy and mental unsoundness.''

It will further be noted, in reading the response to a petition for rehearing (181 Ky. 764, 205 S. W. 951), this court confined the rule of the Tierney case to coal lands, and specifically left open the question of what rule should be applied to oil and gas leases.

The instant case does not fall within the Tierney case, as the legislation here in question does not provide for a leasing of an infant's land for a period which may extend beyond the minority of the ward, but for an outright sale. It is not an effort to exercise a guardianship over the property of the infant after he comes of age, the thing condemned in the Tierney case.

We are next confronted by the argument of appellant that, in authorizing a sale when deemed by the court to ''be advisable'' the Legislature has fixed no standard for such sale and hence the act is invalid for that reason. The scope of that line of cases illustrated by United States v. L. Cohen Grocer Co., supra, relied on by appellant, was set forth in the recent case of Bailey v. Commonwealth, 235 Ky. 173, 30 S. W. (2d) 879, 880. We there said:

> ''The reason underlying such decisions is not founded upon the general uncertainties that attend jury trials, but it is based upon the fact that the elements necessary to determine the requirements of the law are unknown and unknowable in advance by any determinate or determinable criterion, practice, or precedent. A penal or criminal statute must prescribe a rule of conduct with sufficient particularity to enable those affected by it to know what is demanded or forbidden. Cf. Standard Chemicals & Metals Corp. v. Waugh Chem. Corp., 231 N. Y. 51, 131 N. E. 566, 14 A. L. R. 1054''

In the instant case, it is true that the term ''advisable'' alone is used, but, as said in the case of Liberty Bank & Trust Co. v. Kentucky Title Trust Co., 239 Ky. 263, 39 S. W. (2d) 258, 260, where the question was as to the power of the county court to appoint a personal

representative, the statute fixing no qualification, instruction, or limitation:

> "The authority, however, is not absolute, but judicial, and must be exercised in accordance with prevailing principles of judicial procedure. The power of the court is not restricted, but its duty, of course is to select a suitable person for the trust."

In the Bailey case, supra, in upholding a statute making it an offense for an employer to fail to provide "suitable and proper" toilet facilities for women employees, against the contention that the statute fixed no standards as to what should be considered "suitable and proper," after pointing out how like legislation with regard to the duty of railroads to furnish "convenient and suitable" toilet facilities for its patrons had been upheld, we said:

> "It is not pointed out that any material difference exists between the standard of 'suitable and convenient', imposed upon the railroads with respect to toilets, and that of 'suitable and proper' addressed to another class, of which the appellant is a member, and referring to the same subject. One is as certain, exact, and comprehensive as the other, and as easily obeyed. And the later legislation has the added benefit of the light reflected by experience in the administration of the earlier enactment. We apprehend no practical difficulty could be encountered by any one in observing the directions of the statute. Washrooms and water closets are matters of such common convenience and everyday experience that it would be 'easy for common sense to keep to what is safe,' and avoid any danger from mistaking the meaning of the law. The settled construction of the words used in the railroad statutes furnishes a safe guide for any one wishing to comply with the act here involved. The enactment is sufficiently specific to meet the constitutional requirements, since it plainly provides what is necessary to be done by those coming within its purview, and is not subject to criticism that it is too vague and uncertain for practical observance."

And so here. The term "advisable" must be construed and the authority it confers must be exercised in accordance with prevailing principles of judicial proce-

dure. The duty of the court is, of course, to authorize such sales only when deemed for the best interests of the ward, and that will be, as we said in the Bailey case, when in accordance with the settled ideas of our jurisprudence, as expressed in the legislation heretofore enacted, the reasons are present which would have authorized a sale of real property of persons under disability as the law stood when the act of 1930 here in question was passed. Indeed, it is patent that the real purpose of the act of 1930 was to authorize a private sale when ratified by the court of a ward's real estate where a sale could be had under existing law but only through the machinery of a commissioner's sale. The act of 1930 meant to go no further. As so construed, the objections of appellant to its validity fail, and the act must he held constitutional and valid.

Coming to the final argument of appellant to the effect that the proof was taken herein by depositions and not on interrogatories as provided for by section 574 of the Civil Code of Practice, it is sufficient to say that this act of 1930 clearly provides that proof shall be taken when it is sought to sell the lands of a ward in accordance with its provisions by depositions, and not on interrogatories. Hence the provisions of section 574 of the Civil Code of Practice have no application to the manner of taking proof in a proceeding under section 2150a of the Statutes.

The judgment of the lower court being in accord with these views, it is affirmed.

Whole court sitting.