## Gross v. Commonwealth.

(Decided Oct. 26, 1934.)

POPE & BAKER for appellant.

BAILEY P. WOOTTON, Attorney General, and DAVID C. WALLS, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

This is an appeal from a judgment of the Harlan circuit court, upholding the constitutionality of chapter 104, art. 4, sec. 8, of the Acts of 1932. The sole question therein presented and decided was the constitutionality of the act. The appealed case thus decided in the Harlan circuit court was tried upon an appeal thereto from the Harlan county court upon an agreed statement of facts filed in the record, upon which it was tried in both the lower courts to test the constitutionality of this attacked section of the 1932 Acts, which also appears as section 2739j-76 in the 1933 Supplement to Baldwin's Kentucky Statutes Service.

The stipulation of facts upon which the case was tried below is as follows:

"It is agreed by the plaintiff, Commonwealth of Kentucky, and by the defendant, C. P. Gross, that there has been duly issued a warrant charging the defendant with violating section 2739j-76, Kentucky Statutes, in this, to-wit; that the defendant, C. P. Gross, is operating a taxi automobile upon the highways of this state without obtaining the proper insurance upon his passengers and procuring an indemnity bond as is provided in the above section, and it is the purpose of this stipulation that this case be appealed to the circuit court of Harlan county and thence to the Kentucky Court of Appeals and there to test out the constitutionality of section 2739j-76. It is agreed by and between the plaintiff and the defendant that the defendant is violating the above mentioned section in not having posted the bond or taken out the insurance as is provided in the above act."

Upon submission of the case to the trial court for judgment upon the appellant's special plea made of unconstitutionality of the act to the warrant and upon the agreed statement of facts, supra, the lower court held the act constitutional and this appeal results. By the above-quoted agreed stipulation of facts, the appellant admits his continued violation of the criticized provision of said 1932 act, in that he admits his operation of a taxi for hire upon the state highways without having posted the bond or procured the insurance required under the attacked provision of said act, reading in part as follows:

"No certificate or permit shall be issued until there has been filed with and accepted by the Commission a good and sufficient indemnity bond or insurance policy issued by some surety or insurance company or other insurance carrier, duly authorized to transact business as such with this State, which shall provide by such terms, conditions and provisions and *in such penal sums or maximum amounts as said Commission may deem necessary* for the reasonable protection of the patrons of the operator of the motor vehicle for hire and of the public in the collection of damages for which the operator may be liable by reason of the operation of any motor vehicle for hire. * * *" (Italics ours.)

The appellant attacks the constitutionality of this

quoted provision of section 2739j-76 of the 1933 Supplement, Kentucky Statutes, or chapter 104, article 4, sec. 8, of the Acts of 1932, for the reason, he contends, that it constitutes an invalid delegation by the Legislature to the tax commission of its authority to legislate in violation of the provisions of the Constitution and that it is without power to delegate the wide, unbridled authority which it possesses to legislate to a subordinate commission, which is here attempted, he asserts, in this act in delegating to the tax commission the undefined and unlimited authority to fix the amount of the insurance to be carried by taxi owners ''in such penal sums or maximum amounts as said Commission may deem necessary,'' etc.; that such power given the commission is without check, balance, or limitation upon its exercise and in effect gives it the power to make law rather than merely to administer the law; that under the attacked provision, the commission is given an unlimited, arbitrary power, in the capricious exercise of which it might require of taxi owners seeking a permit of it a bond or insurance in a maximum amount of five million as well as five thousand dollars; that the delegation of such power to the commission is a violation of section 2 of the Bill of Rights, declaring that ''absolute and arbitrary power over the lives, liberty and property of freemen exists nowhere in a republic'' and forbids ''the very idea that one man may be compelled to hold his life, or the means of living, or any material right essential to the enjoyment of life, at the mere will of another.'' Further, appellant insists that the attacked statute is unconstitutional for the reason that the Legislature cannot delegate, as he contends is by the provisions of this act attempted, to a board or a commission a discretion to grant, refuse, or revoke a license to carry on an ordinarily lawful business or profession, without prescribing definite rules or standards for the guidance of the officials to whom is given the discharge or exercise of such discretionary power.

The appellant contends that the applicable rule of law for the determination of the validity or constitutionality of the attacked measure is announced by the learned annotator of vol. 12 A. L. R. at page 1436 as representing the majority rule and as also that accepted and announced as such by this court, which is to the effect that:

"A statute or ordinance which vests arbitrary discretion with respect to an ordinarily lawful business, profession, appliance, etc., in public officials, without prescribing a uniform rule of action, or, in other words, which authorizes the issuing or withholding of licenses, permits, approvals, etc., according as the designated officials arbitrarily choose, without reference to all of the class to which the statute or ordinance under consideration was intended to apply, and without being controlled or guided by any definite rule or specified conditions to whi 1 all similarly situated might knowingly conform,—is unconstitutional and void."

We entertain no dissent from this statement of constitutional law as being a proper statement of the majority rule as well as being that applied in proper instance by this court. However, we do not agree that because of our recognition of such rule as the correct one that it follows that we should sustain appellant's argument that the statute here attacked is to be held invalid as coming within the condemned class stated or when measured by the standard therein announced. Chapter 104 of the Acts of 1932 (Ky. Stats. Supp. 1933, sec. 2739j-42 et seq.) clearly represents an exercise by the Legislature of the state's police power to regulate and govern the transportation for hire of persons and property by motor vehicles on the state's public highways, for the protection of the interests and welfare of its thus traveling citizens. The means adopted by the Legislature for their protection in the exercise of this police power, so long as they have an ascertainable relevancy to the object sought, are within the scope of that power. State Racing Commission v. Latonia Agricultural Ass'n, 136 Ky. 173, 123 S. W. 681, 25 L. R. A. (N. S.) 905. Everything contrary to public policy or inimical to the public interest is the subject of the exercise of the state's police power. Silva v. City of Newport, 150 Ky. 781, 150 S. W. 1024, 42 L. R. A. (N. S.) 1060, Ann. Cas. 1914D, 613; Harris v. City of Louisville, 165 Ky. 559, 177 S. W. 472, Ann. Cas. 1917B, 149. A business affected with public use may be regulated by the state. Reo Bus Lines Co. v. Southern Bus Line Co., 209 Ky. 40, 272 S. W. 18. People of the state have an inherent right to pass laws for public safety, health, morals, and general welfare. Fowler v. Obier, 224 Ky. 742, 7 S. W. (2d) 219.

In the exercise of this useful, necessary and helpful power that the state employs through its Legislature in the administration of its public affairs for the protection of its citizens, we find that chapter 104 of the 1932 Acts was passed, seeking the protection of the public's welfare and interest by providing by section 8, article 4, of said act that no certificate or permit should be issued by the state tax commission until there had been filed with and accepted by it a good and sufficient indemnity bond or insurance policy, providing by its terms and provisions, and in such penal sums or maximum amounts as it may deem necessary, for the reasonable protection of the patrons of the operator of the motor vehicle for hire. It is manifest that the Legislature has here, in the exercise of its police power, enacted a law looking to the safety and protection of the public in their transportation dealings with common carriers or operators of motor vehicles for hire upon its highways. The Legislature is in session from time to time but for a few days and therefore could not, even if it were otherwise proper, administer the laws it deems proper to enact, which renders it necessary for the administration and enforcement of its enacted laws that such power be delegated to other departments of government, commissions, or other administrative agencies.

In the instant case the power for administering the enacted law regulating the operators of motor vehicles for hire upon the state's highways and requiring of them indemnity bonds or insurance before they are to be granted a certificate or permit to operate their transportation business upon the state's highways was delegated by the terms of the act to the tax commission, with the authority thereunder given it to require and accept of such applicants for certificates or permits only such bonds or insurance as by their terms and conditions and in such penal sums or maximum amounts as it "may deem necessary for the reasonable protection of the patrons of the operator of the motor vehicle for hire." We cannot concur in the argument of appellant that the delegation of this authority to the tax commission to accept only such bonds or insurance as in their terms and amounts might be by the commission deemed necessary in the particular instance for the reasonable protection of the traveling public in the collection of damages for which the carrier or operator for hire might be liable is unconstitutional. The act, by the very force of

its terms, fixes and imposes upon the commission, as a standard or guide for restraining it in its fixing of such maximum amount of the bond, the limitation that it should be confined to such a maximum amount as is required to afford reasonable protection to the patrons of the carrier for the collection of damages for its wrongful acts. The act in so providing is not susceptible of the interpretation, nor can it be reasonably construed as vesting the commission with unlimited power or such an arbitrary discretion as enables it to require of applicants for permits the execution of bonds or insurance in capricious or unreasonable amounts, under color of exercising the power delegated it under the attacked provision, in that by it—both by implication and its very terms—it is limited to taking bonds or insurance for such maximum amounts as are required only for the public's *reasonable* protection in the collection of damages for which the operators, to whom certificates or permits are granted, may be found liable.

The power thus given the commission to administer the law, by requiring of applicants for certificates or permits such bonds or insurance as in the exercise of its discretion are deemed sufficient in their terms and amounts to protect their patrons, could not be regarded by the very limitations imposed and manifested by the language employed in the statute, as thereby delegating an arbitrary or unlimited power to the commission. The same question and argument as here made was presented in the Ashland Transfer Co. v. State Tax Commission, 247 Ky. 144, 56 S. W. (2d) 691, 695, 87 A. L. R. 534, wherein the court said:

"The same question was made in the case of Union Bridge Company v. United States, 204 U. S. 365, 27 S. Ct. 367, 373, 51 L. Ed. 523, in which the universal rule is recognized that neither Congress nor a state Legislature may delegate legislative powers to an administrative or executive officer. But at the same time it was most emphatically asserted that it is competent for a legislative body in framing a statute to delegate to such executive or administrative officers *regulatory* powers by which they are authorized and empowered to find facts and determine conditions to which the law may or may not apply. * * * The proper distinction, the court said, was this: 'The legislature cannot delegate its power to make a law; but it can make a

law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend. To deny this would be to stop the wheels of government. There are many things upon which wise and useful legislation must depend which cannot be known to the lawmaking power, and must, therefore, be a subject of inquiry and determination outside of the halls of legislation.' ''

In the Ashland Transfer Co. Case, supra, there was also cited the case of Cincinnati, Wilmington & Zanesville R. Co. v. Clinton County Com'rs, 1 Ohio St. 77, where Judge Ranney, speaking for the court, said:

"The true distinction, therefore, is, between the delegation of power to make the law, which necessarily involves a discretion as to what it shall be, and conferring an authority or discretion as to its execution, to be exercised under and in pursuance of the law. The first cannot be done; to the latter no valid objection can be made."

Also in this connection and to like effect compare the case of Riley v. Commonwealth, 235 Ky. 173, 30 S. W. (2d) 879, where a proceeding was instituted against the appellant Bailey for violation of chapter 77, Laws of 1912, a section of which provided, "every person, firm or corporation employing females shall provide suitable and proper wash rooms and water closets," etc. Upon trial he was convicted and, on appeal, challenged the statute upon the ground that it violated both the State and Federal Constitutions. He contended that the statute was void for uncertainty because it failed to erect any standard of conduct possible for a person to know and observe. The question, therefore, was whether the term "suitable and proper," as applied to toilet facilities, constituted a legal standard. The court, in its opinion responding to the criticism of the statute as invalid, because expressed in vague and general terms, and the criticism made that the terms "suitable and proper" came within the rule condemning their use as providing a standard of conduct, said:

"But it is firmly established by decisions of equal authority that a criminal law is not unconstitutional merely because it throws upon people the risk of rightly estimating a matter of degree which

deals with fixed and actual, as distinguished from imaginary and unascertained, conditions. Nash v. United States, 229 U. S. 373, 33 S. Ct. 780, 57 L. Ed. 1232; Waters-Pierce Oil Co. v. Texas, 212 U. S. 86, 29 S. Ct. 220, 53 L. Ed. 417; Adams v. Greene, 182 Ky. 504, 206 S. W. 759. * * * It has been held for many years that a statute requiring a railroad company to provide 'a convenient and suitable waiting room and water-closet * * * at all * * * cities and towns * * * and keep and maintain the same in decent order and repair,' is valid. Ky. Stats. sec. 772; Louisville & N. R. Co. v. Com., 103 Ky. 605, 45 S. W. 880, 46 S. W. 697, 20 Ky. Law Rep. 366. * * * The settled construction of the words used in the railroad statutes furnishes a safe guide for any one wishing to comply with the act here involved. The enactment is sufficiently specific to meet the constitutional requirements, since it plainly provides what is necessary to be done by those coming within its purview, and is not subject to the criticism that it is too vague and uncertain for practical observance. Standard Oil Co. v. United States, 221 U. S. 1, 31 S. Ct. 502, 55 L. Ed. 619, 34 L. R. A. [N. S.] 834, Ann. Cas. 1912D, 734.''

We are of the opinion that the authority here given by the act in question to the commission to require bonds or insurance in such maximum amounts as it might deem necessary from operators of motor vehicles applying to it for certificates or permits, wherein appear widely variant facts, forecasting a widely different range of prospective liability, for the protection of the patrons of the carrier or motor vehicle operator was one conferring an authority or discretion upon the commission, not absolute but one by its very terms impliedly defined and limited in its scope to the effective execution of the law as one only to be exercised under and in pursuance of the law. In such view of the act, we conceive it to be sufficiently specific and definite as to the amount of bonds that may be required to meet the constitutional requirement that it must not be too vague for practical observance and application. Kentland Coal & Coke Co. v. Coleman's Guardian, 243 Ky. 184, 47 S. W. (2d) 1069.

Further, the appellant, by supplemental brief, requests, in which he is joined by appellee, that the court in passing on the constitutionality of section 2739j-76,

attacked as unconstitutional, also pass upon sections 27391-3 and 27391-11 of the Statutes, Supplement 1933, as to the apparent conflict he claims exists between the said three sections and also to determine whether either of said sections is unconstitutional. We do not deem it advisable to further extend this opinion by going outside the one question presented by the appeal and entering upon a lengthy discussion of the distinctive and differentiating features of these three separate sections of these regulatory laws affecting the motor vehicle transportation business, inasmuch as a careful reading and examination of the respective sections of the separate chapters of the different acts, as is evidenced by their respective titles as well as their differing provisions, persuade us that these respective sections are not conflicting in their provisions, but were intended to apply respectively to different classes and character of motor vehicle operators. It is to be noted that by the title of chapter 104 of the Acts of 1932 it is described as "An Act authorizing, regulating and governing the transportation for hire of persons and property by motor vehicles on public highways," and that by section 8, article 4 thereof (also appearing as section 2739j-76 of the 1933 Supplement of Kentucky Statutes), here involved, it is provided that "no *certificate* or *permit* shall be issued until there has been filed with and accepted by the Commission a good and sufficient indemnity bond or insurance policy" (italics ours), whereas section 27391-3 of the 1933 Supplement to the Statutes (which is section 3 of Chapter 78 of the Acts of 1930) is entitled, "An Act requiring all owners of motor vehicles operating for hire for the transportation of persons over any of the *highways* or *streets* of *any of* the *municipalities of this Commonwealth* to secure personal liability and property damage insurance or bond to indemnify passengers or other persons in an amount of not less than Five Thousand Dollars" (italics ours) and that by section 4 of said chapter 78 of the 1930 Act (Ky. Stats. Supp. 1933, sec. 27391-4), it is expressly provided that it was in no way to affect or apply to "motor vehicles operating under a certificate of public necessity or convenience between fixed termini," and further that section 27391-11 or chapter 99 of the Acts of 1932, is entitled, "An Act to further regulate motor vehicles for the carriage of passengers for hire, *not operating under certificates of public convenience and necessity,* and to increase the powers of

the State Tax Commission in respect thereof.'' (Italics ours.) It will thus be seen that by the respective captions and differing provisions of these three separate acts they are made to relate to different classes of applicants or as stated in the title to the act of 1930, chapter 78, its provisions apply to ''owners of motor vehicles operating for hire * * * over any of the highways or streets of any of the municipalities of this Commonwealth.'' It would therefore appear that these sections of the statutes, thus differing both in their terms and in their subject-matter, are therefore not in conflict the one with the other or others in that they do not prescribe different terms and provisions as applicable to the same class of applicants or subject-matter. It is further to be noted that by the title recital to section 27391-11 or section 3 of chapter 78 of the Acts of 1930 (Ky. Stats. Supp. 1933, sec. 27391-3), it would appear applicable to the admitted facts as here presented in the instant case and furnishes sufficient answer to appellant's contention, it being there provided that before any license is granted, the applicants shall furnish security by filing with the commissioner of motor transportation good and sufficient bond, payable to the commonwealth of Kentucky, etc., which bond shall be in the penal sum of $5,000 for each motor vehicle operated, for the death or injury to any passenger or passengers or other persons, and the sum of $1,000 for each vehicle on any property injured in connection with the operation of said motor vehicle. Applicant contends that section 2739j-76 is void because of its failure to fix a maximum amount in which the bond or insurance can be required. Appellant in his brief states that:

> ''An examination of the cases reveals that the majority of courts hold that the taxi business may be regulated by the legislatures of the various states, even to the point of compelling the carrying of insurance, but an examination of these various statutes also reveals that [without exception, we think] the maximum amount of insurance to be carried is prescribed by the legislatures themselves and not left up to the boards or commissions as is sought to be done in the case at bar.''

He argues that section 2739j-76 is invalid for want of its naming such amount, citing as an example of what he regards as a valid regulatory law the Tennessee stat-

ute relating to the taxi business, which provides that before such common carrier may conduct his business, he must execute a bond, with good and sufficient sureties, in no case to exceed $5,000 for each car operated.

It would appear that, independently of the reasons we have hereinabove assigned in support of the constitutionality of this measure attacked, the claim of appellant in this respect is met by the provisions of section 2739l-11, Ky. Stats., which meets the stated requirement and satisfies the contention appellant here makes to the effect that there should be prescribed by the Legislature in the act the maximum amount of the bond or insurance to be required rather than have it left to the discretion of the board or commission to fix its amount.

Such being our views, we conclude that section 2739j-76 is constitutional, and also that the further sections 2739l-3 and 2739l-11, being found neither in conflict the one with the other or either with section 2739j-76, are also constitutional. The judgment of the lower court, being thus in accord with our opinion as above indicated, it is affirmed.

Whole court sitting.