# V. T. C. Lines, Inc., v. Durham.
(Decided March 18, 1938.)

G. G. RAWLINGS for appellant.

HARVEY FUSON and GEORGE R. POPE for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER— Affirming.

Appellant, by its petition, alleged its duly acquired corporate powers and possession of legal permit to operate passenger busses over certain public highways in Harlan county, Ky. Defendants were twenty-six persons, including appellee, Durham, all taxicab operators. As a basis for its right to injunctive relief, appellant alleged that defendants were illegally operating taxis over its permitted lines without complying with the motor vehicle laws. That on account of the illegal operation over its lines appellant is being deprived of fares, which "it would get if the taxis did not operate." It alleged that each defendant was insolvent, and that plaintiff has no remedy to collect from them by judgment or execution, hence there "will be a total loss and irreparable injury to plaintiff if defendants are permitted to operate over its lines, and they will so continue to illegally operate unless restrained." The relief sought was an order restraining defendants from operating over its lines.

The clerk of the Harlan circuit court, upon the filing of the petition, issued, and there was service of, the following order, addressed to each of the twenty-six defendants; the routes named therein being the same as described in the petition:

"You and each of the above defendants set out herein are enjoined and restrained from operating a taxi or any one for them, in the city of Harlan, Harlan County, Kentucky, or on any of the public highways up and down Clover Fork or Yocum's Creek, or Martin's Fork or Catron's Creek over any of plaintiff's bus lines in Harlan County, Kentucky, until further orders of this court."

Defendants moved the court to require appellant to

elect which one of the twenty-six causes, asserted to have been improperly joined, it would further prosecute; this motion was sustained, and appellant later elected to prosecute Durham's case. The parties stipulated that any orders entered in the Durham case should apply in the other twenty-five.

On January 5, 1938, Durham (and others) notified appellant that on January 7, they would move the judge of the Harlan circuit court to dissolve the injunction granted by the clerk of the court on January 1. The court on that day entered an order giving plaintiff until January 10 to elect, and it did elect as stated above. On the same day the court entered an order leaving the clerk's order in effect until further orders, though in a modified form.

On January 10, plaintiff filed an amended petition, in which it alleged that defendant Durham had been for several months "picking up passengers and collecting fares on its exclusive lines, which fares belong to the plaintiff; that he is daily passing to and fro over these lines and taking passengers, and collecting fares which this plaintiff would have gotten and would get if defendant were not so operating," and that the taking up of passengers and collecting fares was done without previous arrangement or engagement. Plaintiff reasserted its lack of remedy to protect it from this alleged illegal operation, and added that many warrants had issued against defendant, as well as other taxi operators who, though fined by the court, had nevertheless continued operations.

On February 11, the court below overruled Durham's demurrer to the petition, to which defendant excepted. The court then took up Durham's motion to dissolve or modify the restraining order granted by the clerk, and overruled the motion to dissolve, but sustained the motion to modify, by the following order:

"Durham is permitted, under said restraining order to carry passengers from Harlan on Clover Fork, Yocum's Creek, Martin's Fork and Catron's Creek and over any of the roads and highways where the plaintiff has a franchise, where defendant has made a previous engagement to pick up a passenger or passengers at a given point on said

roads, but he is not permitted to pick up passengers anywhere along the said public highways where passengers are hauled from a given point to another point on said highways, unless under previous agreement aforesaid, and he is permitted to return the said passenger or passengers to the original point where first picked up under said agreement, and the restraining order to this extent is modified."

To so much of the first order modifying the original restraining order the plaintiff excepted, and signified intention to apply to a judge of this court for an order reinstating the original restraining order; the application was made, and such motion was overruled on January 17. On February 22, the court below took the case up for hearing on its merit, and defendant stood on his demurrer. The court again refused to dissolve the injunction granted by the clerk, but permitted his modified order to stand. To this ruling plaintiff excepted, prayed and was granted appeal to this court.

The motion considered by the lower court, when the case was heard on merits, appears to have been the motion to modify or dissolve the original restraining order, to the ruling on which Durham took no exceptions; the only exception by plaintiff was "to the ruling of the court" presumably in modification of the clerk's order.

As contended by appellant in argument, Durham's demurrer to its petition admitted all the facts plead therein. At the outset appellee admits:

"The right to sue out a restraining order, and maintain it to a limited extent, has been upheld by the court of appeals. We are not arguing that no kind of injunction will lie, but we are insisting that an injunction as broad as the temporary restraining order in this case goes beyond the law of the case."

The argument of appellee is directed only against the reinstatement of the restraining order, which in effect did not allow Durham to operate at all, or in any manner, over appellant's exclusive routes. Appellant contends for its reinstatement.

That injunction will lie in cases where one, not

legally authorized to operate, is operating a motor vehicle over a defined route of one who had obtained a permit, thereby depriving the latter of business to which it is legally entitled, is no longer an open question. Gross v. Com., 256 Ky. 19, 75 S. W. (2d) 558; Crigger & Stepp v. Allen, 219 Ky. 254, 292 S. W. 811; Slusher v. Safety Coach Transit Company, 229 Ky. 731, 17 S. W. (2d) 1012, 1013, 66 A. L. R. 1378; Hazard Bus Company v. Wells, 226 Ky. 591, 11 S. W. (2d) 413, 414.

In these cases we held that a carrier who had complied with the statutes regulating the "carrier for hire" business, and had suffered damage by acts of competitors who had failed to comply with requisite laws, was entitled to an injunction to prevent infringement upon its rights. In several of the cases we held the relief to be available upon proper showing even though the statute provided that the recalcitrant might be prosecuted. The cases referred to quote or point out the various involved sections of the statutes.

The question presented here for consideration is whether or not the appellee, under the law, may in pursuing his taxi business make what are defined "casual trips" over the exclusive routes of appellant, and appellee contends that the "casual trip" law is now in force, as it was when construed in Hazard Bus Company v. Wells, supra. In that case the Bus Company had sought an injunction against a taxi operator who was infringing on its rights in the same manner, and under the same circumstances, seemingly, as appear in this case. The court below had denied the injunction, holding that while appellees could "casually" carry, construed sections 2739j-21 and 2739j-21a, Kentucky Statutes, which referred to and defined "casual trips" to mean "that the original trip does not begin until a passenger or passengers are obtained at some point, wherever that may be, and that a person not operating under a certificate may take on one or more passengers at a point along a route over which a certificate of convenience has been granted to another, but that he cannot thereafter transport any other passengers than those that began the original trip until after the return trip has been made."

On appeal we held the lower court's construction to be not in conformity with the sections cited, and after reciting the facts showing what was done by the alleged

interlopers in that case, and after quoting the two sections above, said:

> " ' "Casual trips" as used in this act and section means that any person, firm or corporation not operating under a certificate between a fixed termini or over a regular route may operate over any route between a fixed termini where other person or persons hold a certificate or certificates, provided that on said casual trips no one shall be allowed to pick up any passenger along the route, nor be permitted on the return trip to haul any person or persons other than those included in the original trip.' * * * We do not mean to be understood as holding that a prospective passenger may not engage a taxicab in advance to pick him up at any point, but under such circumstances the original trip would begin when the taxicab left its station, and the operator would be in the employ of the passenger from that time, and the return trip would end when the taxicab returned to its station."

We had theretofore said in the Slusher Case, supra:

> "The act in question expressly reserves to taxicabs and similar carriers the right, pursuant to private contracts, to carry passengers on casual trips, * * * and the injunction in this case protects that right; but the appellant has no right to engage in destructive and forbidden competition with the authorized carrier by seeking out and picking up its prospective passengers at any place or time suiting his convenience."

See, also, Crigger & Stepp Case, supra.

The Hazard Bus Co., and Slusher Cases, supra, were decided prior to 1932, and when the act of 1926 was the controlling regulatory law. The exempting and casual trip definition clauses, sections 2739j-21 and 2739j-21a, were in the Act of March 5, 1926, Acts 1926, c. 112, p. 361. When we turn to the Act of 1932, c. 104, sections 2739j-42 to 2739j-97, Kentucky Statutes, we find that while apparently it purports to be a Code of regulations governing the "transportation for hire of persons and property by motor vehicle," it does not specifically repeal any existing laws, but its last section, 29, Kentucky Statutes, sec. 2739j-97, contains the usual clause:

"All laws and parts of laws in conflict with the provisions of this Act are hereby repealed."

The act (1932) did not carry sections 2739j-21, 2739j-21a, Kentucky Statutes (Act of 1926), nor any section or sections containing their substance. The 1932 Act was amended in 1934 by repealing and re-enacting other sections of the 1932 Act, but none of these have to do with the question here involved. The same is true of 1936 amendments. The Act of 1932, by section 1, section 2739j-42, Kentucky Statutes, made reference to "casual or occasional" trips. It defined a "contract carrier" as meaning "any operator of a motor vehicle for hire other than a common carrier." It further provided:

"'Contract carrier' shall not be construed to mean or include any person, firm or corporation who transports only his own property, or who does not engage in the transportation business but makes occasional or casual trips to transport persons or the property of others for hire."

This act, as said, does not define "casual trips." Neither did it contain the substance of section 2739j-21:

"Nothing in this act shall prohibit a motor transportation company not operating between fixed termini or over a regular route, from making casual trips over routes established hereunder."

Since there was no specific repeal of sections 2739j-21 and 2739j-21a, if there is a repeal it must be by implication; repeals in which manner are not favored. A construction upholding repeal by implication requires that there must appear such a conflict between the compared laws as to make reconciliation impossible. It is the duty of this court to construe questioned acts, if possible, so as to leave both operative, if they can be read together without contradiction, or without leading to an absurd or unreasonable conclusion. Thomas v. McCain, 189 Ky. 373, 224 S. W. 1055.

Section 2739j-42, supra, though failing to define "occasional or casual trips," recognizes the right to make such by those not engaged in the transportation business. The definition as contained in the former act is essential to give force and effect to the clause quoted from the latter act. Without such definition as a guide

the courts would be without advice as to what was intended by the use of the words "occasional or casual" trips, and each court would be left to adopt such meaning as might, under the facts, appear to be proper, and this court would be likewise open to adopt its own definition or to determine the effect to be given the words.

It is not shown in the pleadings whether the appellee is undertaking to operate as a "common carrier," as the term is used in the act, or not. It is not shown that he is operating, or undertaking to operate, between fixed termini. It is charged that he is operating "over the lines" set apart to appellant, without complying with the law.

We find nothing in the Act of 1932 which would specifically prohibit "a motor company not operating between fixed termini or over a regular route, from making casual trips over routes established hereunder." It seems clear from the pleadings that appellee is engaged in some sort of transportation business; just what is the nature of same, other than operating a taxi, is not made clear. This being so, section 2739j-42 might or might not have application to him. The other sections, 2739j-21 and 2739j-21a, Kentucky Statutes, do apply since he is not operating between fixed termini or over a regular route, within contemplation of the laws.

It is doubtful whether or not the Act of 1932, section 2739j-42, or any other section we have observed, repeals the whole of section 2739j-21 of the 1932 Act, but our failure to now determine this question does not prevent us from concluding that so much of sections 21 and 21a, as are involved here, are not repealed, and this being so we are of the opinion that the court's refusal to dissolve the restraining order, and his modification of it, were both in conformity with the law as construed heretofore by this court. It may be suggested, as the court below well knows, that he has the power to enforce his orders by appropriate proceedings, and since the appellee here has seen fit not to comply with any of the commonwealth's regulatory motor transportation laws, he should be allowed to operate only so far, and no farther, than is permitted by the court's order.

Judgment affirmed.