[Civil No. 2752.  Filed February 12, 1929.]

[274 Pac. 639.]

GEORGE ROSS, Appellant, v. L. A. CLARK and ETTA CLARK, His Wife, Appellees.

See Appeal and Error, 4 C. J., sec. 2846, p. 869, n. 96, sec. 2847, p. 873, n. 23, sec. 3139, p. 1139, n. 78, sec. 3170, p. 1159, n. 39.

Damages, 17 C. J., sec. 268, p. 970, n. 79, sec. 293, p. 994, n. 93, sec. 457, p. 1117, n. 16.

Messrs. Sloan, Holton, McKesson & Scott and Mr. J. E. Russell, for Appellant.

Messrs. Anderson & Gale, for Appellees.

ROSS, J.—This is an action for damages for personal injuries growing out of an automobile collision that occurred on the streets of Prescott, on July 2d, 1928, during the Frontier Celebration.

Defendant, Ross, was a licensed taxicab driver, and at the time was engaged in taking persons to and from the fair grounds, where the celebration was being held. The plaintiffs, husband and wife, with

the husband at the steering wheel of their automobile, late in the afternoon of that day, were driving north on the right side of the street, towards the fair grounds, and defendant, as it is alleged, in an intoxicated condition, was returning from the fair grounds, driving at a speed of fifty to sixty miles an hour, when he lost control of his car and wantonly, culpably, and with utter disregard of the consequences to the life and limb of plaintiffs, and while their car was on the proper or right side of the street, crashed into and collided with the automobile of plaintiffs,

"thereby throwing and hurling plaintiff, Etta Clark, through the windshield thereof, severely cutting, bruising and injuring her on and about her face, head, arms and body; and inflicting divers severe wounds and injuries upon her; and thereby throwing and hurling plaintiff, L. A. Clark, upon and against the steering wheel of plaintiffs' said automobile inflicting serious bruises and injuries upon his chest and lungs.

"That at the time of said accident and collision plaintiff, Etta Clark, was sick and afflicted with tuberculosis, and that the severe physical shock attendant upon said collision has caused said disease to become more active and virulent, and has rendered her sick, sore and incapacitated, and has deprived her of a large part of the benefit of medical care, treatment and rest, and has caused plaintiffs to expend and incur large sums of money for further care and treatment rendered necessary by said collision and physical shock."

Actual damages of $15,000 and punitive of $5,000 were prayed for.

Plaintiffs had a verdict for $12,000 actual and $3,000 punitive damages.

A motion for a new trial was overruled and judgment entered for the above amounts.

On this appeal the issue of negligence is not contested, the defendant admitting that the finding of the jury thereon is sufficiently supported by the evidence and is final on that issue. But he does con-

tend: (1) That the damages of $12,000 are excessive and appear to have been given under the influence of passion and prejudice; (2) that there is an entire want of competent evidence supporting a verdict for $12,000 actual damages; (3) that there is no testimony from which the jury was warranted in awarding future damages, the evidence thereon being entirely speculative; (4) that the evidence does not warrant a verdict for punitive damages; and (5) that the court misdirected the jury as to the law of the case.

The facts gleaned from the evidence bearing upon the issues raised by these assignments are as follows: Plaintiff Etta Clark was suffering with tuberculosis, and some two months before the accident, upon the advice of her physician in California, with her husband removed to Arizona in search of relief. They first went to Flagstaff, but on account of the high altitude were advised by a local physician to go to Prescott, where they arrived about one month prior to the accident. At Prescott plaintiff Etta Clark secured the services of Dr. John W. Flinn, a tuberculosis specialist, who examined her on June 6, 1927, and found that she was suffering with tuberculosis, which he described as a low-grade active disease. He directed her to go to bed and remain there, which she did for one month. On the date of the accident she and her husband had gone for a ride, that being the first time she had been out of bed from the date of her arrival in Prescott. It was testified by both the plaintiffs that Mrs. Clark was thrown forward, breaking the windshield of their car; that her forehead, nose and chin were cut and lacerated; that her eyes were black and swollen shut for several days; that she had bruises on her body, chest, and legs; that within an hour of the accident Dr. Southworth treated her at her home and made no further calls, and was consulted at his office by her husband only twice there-

after; that she visited Dr. Yount and was treated by him a month after the accident.

Drs. R. M. Looney and J. H. Allen, under an appointment by the court, examined the plaintiff Etta Clark a few days before the trial, and the diagnoses of these two physicians, made at the same time, are practically identical. Dr. Looney testified that at the time of the examination she was inclined to be hysterical; that this was manifested by marked twitching of the body and face, a tremulous voice, and crying; that he found a marked erythema, or a redness of the skin; that she was a well-developed and well-nourished woman; that her chest expansion was full and clear on both sides; that there was a marked fibrous or old tuberculosis scar on the upper part of both arms (probably meaning lungs); a few moist rales (meaning wheezing); that her pulse was 134 (normal 72); temperature 99.8 (normal 98.6); blood pressure 148 (normal 120 to 123). As to subjective symptoms, he said that she complained of severe pains and tenderness above the eighth or tenth dorsal vetebra, about the middle of the back. His diagnosis was chronic pulmonary tuberculosis, probably active, in both lungs, and traumatic neurosis—a condition due to trauma. As to the permanency of her nervous condition, Dr. Looney testified:

"Q. Is such a-condition, Doctor, a permanent condition, probably? A. That is hard to say.
"Q. What would you say, Doctor? A. I don't know. Sometimes it is; sometimes it is not.
"Q. You find it-very pronounced now? A. I found it very pronounced as I stated there in my report."

And Dr. Allen said: "Q. And in your opinion that will exist for how long, Doctor? A. Well I don't believe anyone can say exactly how long—the probabilities are that it will continue for some length of time —an indefinite period."

In August plaintiffs motored to Los Angeles, driving to Needles, California, the first day, and completing the trip the next. They spent about six weeks in California and returned to Prescott October 9th, driving to Blythe, California, the first day, and the third day to Prescott. Plaintiff Etta Clark saw Dr. Thompson, who had known her all her life and who was her doctor before she came to Arizona, just one time during her six weeks' visit in California.

Plaintiff Etta Clark was nursed and cared for by her husband, both before and after the accident. He testified that his time was worth one hundred dollars a month for about four months' service subsequent to her injury.

There was no evidence offered as to the value of the services of physicians.

The husband, L. A. Clark, was but slightly injured. He was not prevented thereby from performing his usual work and received no professional services on account of his injuries.

The only special damages proved were for the services of the husband in nursing his wife after the accident for a period of approximately four months at one hundred dollars a month. Making due allowance for this item as a legitimate charge, leaves $11,600 to compensate the plaintiffs for their injuries. The complaint does not apportion the damages claimed, nor does the verdict. It cannot be ascertained from these, or the evidence or the instructions, what amount of the verdict was intended to be awarded the husband or what part of the damages was intended to compensate the wife. The husband's injuries were very slight and ephemeral. He was entitled to some damages, but only enough to compensate him for his injuries. Five thousand eight hundred dollars or one-half the verdict after deducting the special damages, would be an outrageous amount for the injuries

to the husband. He lost no time from his usual work. He had no treatment from any doctor. There is nothing of record indicating that his injuries were permanent. What part of the lump sum the jury may have figured was to compensate the husband, and what part to compensate the wife, cannot be known. If they figured that the plaintiffs were entitled to the same damages because of the relation of husband and wife, and not on the basis of the injuries sustained, they clearly misconceived the legal effect of the evidence. The statement of counsel for plaintiffs in his brief explains the verdict in these words:

"Possibly, if defendant had requested either an instruction or a special interrogatory that the jury apportion the damages between the plaintiffs in the amount that they deemed just and reasonable, that they would probably have given more to Mrs. Clark than to him, but in the absence of such a request, *and in the face of the pleadings and the proof, the presumption is that it is in equal amounts to both of the plaintiffs.*" (Italics ours.)

This theory of accounting for so large a verdict is one explanation, and perhaps the only reasonable one that is possible. The injuries to the wife were quite severe, and we think it may fairly be inferred from the evidence that the traumatic neurosis with which she was affected was the result of the injuries and shock she received in the accident, and as a consequence thereof that the disease she had was aggravated; but whether such deleterious effects are permanent or not was left, by the physicians who examined her under the order of the court, in doubt. They said, in effect, that they did not know how long her nervous condition would last. Neither was willing to state that her nervous condition was permanent. The implication from this testimony is that it would

in time disappear. The medical and surgical treatment of the wife after the accident were very meager for one seriously and permanently injured. Also, her ability to travel long distances by automobile is very significant.

We realize that a jury's verdict ought not to be vacated or the amount thereof reduced except for the most cogent reasons. The rule here and elsewhere is that the verdict will be left undisturbed if reasonably supported by the evidence, when the trial is free from error. There is no absolute fixed legal rule of compensation in actions of this kind, and as a reviewing court we feel we ought not to interfere with the verdict unless it clearly appears that the jury has mistakenly applied the wrong principles in estimating the damages, or was actuated by improper motives or bias indicating passion or prejudice. This is because in actions for personal injuries the law does not attempt to fix precise rules for the measure of the damages, but leaves their assessment to the good sense and unbiased judgment of the jury. We would not feel justified in disturbing the verdict for mere excess; but where, because of the way the issues were made up and the case was tried and submitted, it is reasonably certain that the excess was the result of a misconception by the jury of the principles of law governing in the estimate of damages, we think justice requires that we exercise our right to correct the error, so far as we can, by directing a *remittitur* of the excess. This doctrine is not new in this jurisdiction. In the very early case of *Southern Pacific Co.* v. *Tomlinson,* 4 Ariz. 126, 33 Pac. 710, the court ordered a *remittitur* because it appeared the jury had adopted a too liberal view of the damages, and the rule there announced has been followed since. *Gila Valley etc. Ry. Co.* v. *Hall,* 13 Ariz. 270, 112 Pac. 845; *Verde etc. Ry. Co.* v. *Stevenson,* 22 Ariz.

188, 196 Pac. 164. It might have been through a misconception of the legal effect of the evidence, or it might have been through sympathy, but it seems certain the jury was extremely liberal in assessing damages, especially so when it appears that one of the plaintiffs has shown himself entitled to little more than nominal damages.

As to the punitive damages, we do not think them too large, nor do we think them unjustified by the facts. "Punitive damages" are not intended to remunerate the injured party for the damages he may have sustained. They are not to compensate; they are the penalty the law inflicts for gross, wanton, and culpable negligence, and are allowed as a warning or as an example to defendants and others. Because they are an example as to what the law will do for such conduct when it results in injury to the person or property of others, they are sometimes called exemplary damages. 8 R. C. L. 581, § 129; 17 C. J. 714, § 40.

The evidence as to defendant's condition at the time is in dispute. He and several others testified that he was sober and had not indulged, while a number, among them his passengers at the time of the accident, testified that his breath smelled strongly of liquor and that he was drunk. The jury must have believed that he was intoxicated. The evidence tends to show he was driving at a reckless speed, with little control of his car. The traffic at the place and time was heavy, and for safety to himself and others demanded careful driving. It is made a criminal offense for a person to drive an automobile on the public highways of this state while in an intoxicated condition. The jury fixed the defendant's penalty pretty high, but we think the example and warning to drunken or intoxicated operators of automobiles

just and wholesome, and that it should not be disturbed by us.

The exception to the court's instruction is that it authorized the jury to assess future damages in the absence of any evidence to support it. In the first place, the instruction did not tell the jury that they could consider future pain and suffering or loss; but, if it had, we think it would not have been improper under the evidence. The injuries were not shown to be permanent. The evidence does show, however, that Etta Clark had not fully recovered from them and would not for some indefinite time. 17 C. J. 762, § 94.

We conclude that, if $1,000 actual damages be allowed to the husband and $6,000 to the wife on account of injuries sustained, they will be amply compensated.

The judgment is that, if the plaintiffs within twenty days from the date hereof shall file a *remittitur* of $5,000, judgment will be entered against the defendant and his sureties on appeal for the remainder of the judgment appealed from, to wit, $10,000 with costs in the trial and this court; otherwise, let the judgment be reversed and the cause remanded for a new trial.

LOCKWOOD, C. J., and McALISTER, J., concur.