## Maryland Casualty Co. et al. v. Baker.

March 18, 1947.

Watt M. Prichard, Judge.

Caldwell & Gray, Clyde Levi and Keenon & Odear for appellants.
Diederich & Lycan for appellee.

OPINION OF THE COURT BY JUDGE DAWSON—Affirming.

This appeal is from a judgment against Maryland Casualty Company and American Fidelity & Casualty Company (hereinafter referred to as Maryland and American) in a joint action against both companies as insurers of John Pelphrey, the operator of a licensed taxicab business in the City of Ashland.

Prior to the institution of this action appellee had obtained a judgment against Pelphrey in the amount of $1,257.95, for damages resulting from the actions of one of Pelphrey's drivers. This judgment was not satisfied by Pelphrey, hence this action against the insurance companies.

Both appellants disclaim any liability, but there is a controversy between them as to whose policy was in effect on the date of the injuries to appellee, Maryland claiming that its policy had been canceled prior to that date, and American insisting that its policy had not become effective.

The facts as stipulated show that on August 5, 1941, the appellee arrived at Ashland by rail just after midnight. She lived at Russell, approximately five miles north of Ashland, and since the busses were not running engaged a taxi owned by Pelphrey to take her home. The driver of the taxi was drinking and on the way to Russell he stopped and, according to appellee, insulted her and tore her clothing. Thereafter she brought suit against Pelphrey and obtained the judgment for $1,-257.95, which includes $7.95 compensatory and $1,250 punitive damages.

Maryland had issued a policy to Pelphrey on April 12, 1941. When he became delinquent in the payment of the premiums, Maryland, on July 20, 1941, gave him written notice of its intention to cancel the policy. A copy of that notice was delivered to the clerk of the City of Ashland, and on the 31st day of July 1941, to the Division of Motor Transportation of Kentucky. This notice must be given at least fifteen days prior to the date of cancellation. KRS 281.080. KS sec. 2739L—11, in effect in 1941, is to the same effect. The notice given by Maryland to the Director of Motor Transportation stated that its policy would be canceled as of August 16, 1941.

On July 30, 1941 Pelphrey executed a release of the Maryland policy and delivered it to that company. Whatever the effect of this release by Pelphrey as between him and Maryland, it certainly did not abrogate the fifteen day provision of the statute, or affect the rights of the public. From this statement of the facts it is entirely clear that Maryland had not completed the process of cancellation, and its policy was in full force and effect on August 5, 1941, the date appellee sustained the injuries complained of.

On July 25, 1941, after Pelphrey had received Maryland's notice of its intention to cancel its policy, he applied to a local representative of American for the insurance he was required to carry in order to retain his permit to operate his taxicabs (KRS 281.460). The local agent telephoned the branch manager of American at Lexington and asked for authority to accept the application. He received a wire saying that the application was acceptable. Formal written application to American was made on July 28, 1941, and this was mailed by the local agent to the branch manager, with a letter stating that the premium would be paid upon delivery of the policy. The branch manager forwarded the written application and the letter from the local agent to the home office of the American, which executed its policy as of July 31, 1941, and mailed it to the branch manager at Lexington for delivery. About that time the clerk of the City of Ashland, being on notice that Maryland was in the process of canceling its policy, requested Pelphrey to furnish proof that his taxicabs were covered by insurance, and on August 4, 1941, the local agent of American advised the clerk that Pelphrey's cabs were insured by his company until further notice. This advice was in the form of a letter, copy of which was sent to the branch manager at Lexington with the request that the policy be forwarded at once.

On August 7, 1941, the branch manager forwarded the policy to the local agent advising him not to deliver the policy to Pelphrey, or a copy of it to the City of Ashland, until the premium was paid. This letter further stated that as soon as payment was received a copy of the policy would be filed with the Division of Motor Transportation. After this policy had been mailed to the local agent at Ashland the incident of which appellee

complains was reported, both to the local agent and to the branch manager of American. The branch manager thereupon directed the local agent not to make delivery of the policy or file a copy with the City of Ashland. Notwithstanding this the local agent made delivery of the original policy to Pelphrey and collected the stipulated premium. Upon being informed of this fact the branch manager advised the local agent by letter dated August 12, 1941, that the policy was to be canceled effective August 16, 1941. This letter is as follows: "This will confirm our telephone conversation as of this morning at which time it was decided that the present policy which has been issued to John Pelphrey is to be cancelled today effective August 16, 1941, and you will find attached copy of cancellation notice. In the event Mr. Pelphrey wishes us to issue him another policy dated August 16th, and I understand he does, you are to forward me promptly check covering the initial deposit of $48.00 less brokerage of 10%, plus earned premium under the above policy for which we will accept $15.00 although according to the short rate cancellation table it should be $21.00. As soon as the original policy has been cancelled we will have to take them up and I would thank you to return them to this office along with the other enclosures."

On that same date the branch manager wrote Pelphrey that its policy "is hereby cancelled from noon of August 16, 1941." A copy of this letter was sent to the clerk of the City of Ashland.

On August 14, 1941, the local agent of American wrote its branch manager as follows:

"We are in receipt of your letter of August 12th confirming telephone conversation. We contacted Mr. Pelphrey and he agreed that the above designated policy may be cancelled with the understanding that you are to issue another policy dated August 16th, covering his two taxicabs. He has paid us the additional premium of $15.00.

"We are enclosing our check for $56.70, which plus our ten percent commission makes a total of $63.00, the amount Mr. Pelphrey has paid us.

"Please issue this policy immediately and get it here by return mail inasmuch as he cannot operate his

cabs after the 16th unless he has the policy with the city clerk. We are also enclosing the above designated policy for cancellation.''

From this correspondence it is clear, and indeed it is stipulated, that American collected and retained the premium for the first policy covering the period from July 31, 1941 to August 16, 1941, the issuing date of the second policy. Subsequently the August 16th policy was delivered to Pelphrey and a copy of it to the City of Ashland and the Division of Motor Transportation.

These facts indicate quite clearly that the American policy, dated July 31, 1941, was in effect at the time of appellee's injuries, August 5, 1941. This was recognized by American as is shown, not only by the fact that it insisted on collecting the premium for the period between July 31, 1941, and August 16, 1941, but because it gave the usual fifteen day notice of cancellation. Both the Maryland and the American policies were in force on August 5, 1941.

This brings us to the question of whether there is any liability under the two policies. The determination of this question requires a construction of KRS 281.460 which is, in part, as follows: ''(1) Before any authorization for the operation of a taxicab or city bus is granted by the division under KRS 281.450, the applicant shall file with the director a good and sufficient bond with adequate corporate surety, payable to the Commonwealth, binding the obligor to pay any final judgment rendered against him arising out of the death or injury to any passenger, or loss of or damage to property while in transit, or death of or injury to other persons or damage to their property, or any act or omission connected with the operation of motor vehicles by the applicant. The bonds shall be in the penal sum of five thousand dollars for each motor vehicle operated, for death of or injury to persons, and in the further sum of one thousand dollars for each motor vehicle operated, for damage to property.''

Subsection 2 of that same section permits the substitution of a policy of insurance for the bond required by subsection 1. This section is a part of Chapter 281 KRS which deals with the regulation of motor carriers, both contract and common. KRS 281.450 through 281.470

deals specifically with taxicabs and city busses, but these sections must be read and considered as an integral part of the entire chapter. These statutes were enacted by the legislature in the exercise of its police power for the safety and protection of the public in its transportation dealings with common carriers or operators of motor vehicles for hire upon the highways of the Commonwealth. See Gross v. Commonwealth, 256 Ky. 19, 75 S. W. 2d 558.

The statutes referred to prohibit the transportation of passengers for hire on public highways without a permit issued by the Division of Motor Transportation, and in order to obtain such permit protection must be afforded prospective passengers through the filing of a bond with adequate corporate surety, or in lieu thereof a policy of insurance which binds the insurer to "pay any final judgment * * * arising out of * * * any act or omission connected with the operation of motor vehicles."

The policies involved here were executed in order that the taxicab owner might retain his permit and continue the operation of his business, and the policies and the statutes must be read and construed together. As was said in Hartford Live Stock Insurance Company v. Gibson, 256 Ky. 338, 76 S. W. 2d 17, 20, "the business of insurance so affects public welfare as to be a proper subject for reasonable regulation by the state through the elimination of ingenious and ambiguous provisions and the avoidance of disadvantages from which policyholders might suffer grevious injustice."

As a general rule statutory requirements are to be considered in construing contracts of insurance, and mandatory statutory provisions must be read into the policies; Galkin v. Lincoln Mutual Casualty Company, 279 Mich. 327, 272 N. W. 694; Newton v. Employers' Liability Assurance Corp., 4 Cir., 107 F. 2d 164; Id., 309 U. S. 673, 60 S. Ct. 616, 84 L. Ed. 1018, and where restrictive provisions of a liability policy conflict with statutory requirements, the statute must control. See Blashfield's Cyclopedia of Automobile Law and Practice, Section 4072, page 117, of Part 2 Volume 6.

The two principal arguments advanced by appellants are that the damages which appellee sustained did not result from the operation of a motor vehicle, and

that a surety is not liable for punitive damages. The two questions are closely related. The decisions relieving sureties upon official bonds from liability on account of punitive damages awarded against officials are not in point. In such cases the bond merely requires the sureties to compensate the injured party for the actual damages sustained because of the misconduct of the official. The reasoning in those cases is that recovery of exemplary damages is not permitted in an action upon a contract, but usually allowed only in actions of tort. Johnson v. Williams' Adm'r, 111 Ky. 289, 63 S. W. 759, 54 L. R. A. 220, 98 Am. St. Rep. 416, and Growbarger v. United States Fidelity & Guaranty Co., 126 Ky. 118, 102 S. W. 873, 11 L. R. A., N. S., 758, 128 Am. St. Rep. 274.

That is not the situation here. We must necessarily rely on the wording of the applicable statute in order to determine whether appellants are liable. Cases from other jurisdictions are cited to the effect that damages because of personal assaults by drivers of taxicabs are not covered by insurance policies issued to the cab owner, but we can not be guided by these decisions. We must construe our own statute, taking into consideration the purpose for which it was enacted.

We are not confronted here with the question of whether the operator of the taxicab is liable for the damages sustained by appellee, since that question has already been determined by the judgment which is the basis of this action. However, in passing, we point out that it is the rule of this state, and the almost universal rule, that a carrier is liable for assaults committed on passengers by its employees, whether the assault is in the discharge of the employee's duties or motivated purely by personal reasons and entirely disconnected with the performance of a duty. See Gladdish v. Southeastern Greyhound Lines, 293 Ky. 498, 169 S. W. 2d 297, and the authorities therein cited.

It will be noted that the language used in KRS 281.460 is broad, and the purpose of the statute is to require that the financial responsibility of the holders of permits to operate taxicabs be such as will protect passengers against damage resulting from "any act or omission connected with the operation of motor vehicles," and insure the payment of "any final judgment"

rendered against the operator on account of such damage.

Here we have a final judgment for damages sustained by a passenger, and to say that these damages did not occur by any "act or omission connected with the operation" of the taxicab is refusing to recognize the clear import of the phraseology of the statute, and is a mere play upon words. Reference to KRS 281.450 shows that any person applying for a permit to transport passengers for hire on public highways in this state must advise the Division of Motor Transportation, among other things, of the names of all drivers employed or to be employed, and notify the Division of any changes made in drivers, and the employment of new drivers. The reason for this requirement is obvious. The whole intent and purpose of these statutes is to afford protection to the members of the public who avail themselves of the facilities provided by the holders of the permits issued pursuant thereto.

The circuit court correctly interpreted the provisions of the statutes involved and properly applied them to the facts in this case. The judgment is correct and it is affirmed.