SOUTHERN FARM BUREAU CASUALTY INSURANCE COMPANY
v. RICHARD A. DANIEL

5-4903                    440 S.W. 2d 582

Opinion Delivered May 5, 1969
[Rehearing denied June 9, 1969.]

*Skillman* & *Furrow* for appellant.

*Spears* & *Sloan* for appellee.

CONLEY BYRD, Justice.    The issues here are (1) whether punitive damages arising out of an accident are recoverable within the terms of appellant Southern Farm Bureau Casualty Insurance Company's automobile liability policy, and (2) whether such recovery is contrary to the public policy of the state of Arkansas.    It is stipulated that as a result of an automobile accident between Larry White and appellee Richard A. Daniel, the jury returned a verdict for Daniel in the amount of $7,000 compensatory damages and $5,000 punitive damages. The policy in question, a comprehensive automobile policy, provides as follows:

> "To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages:
>
> "*Coverage A.*    Because of bodily injuries sustained by any person, and
>
> "*Coverage B.*    Because of injury to or destruction of property, caused by accident and arising out

of the ownership, maintenance, or use of any automobile, including loading and unloading thereof."

So far as our research reveals, this is the first time this issue has come before this court. Cases from other jurisdictions can be found holding both ways, see *American Surety Co. of N. Y.* v. *Gold*, (10th Cir. 1966), 375 F. 2d 523, 20 A.L.R. 3rd 335. Those courts which accentuate heavily the punishment aspect of punitive damages hold that it is against public policy to permit them to be recovered, *Northwestern National Casualty Company* v. *McNulty*, (5th Cir. 1962), 307 F. 2d 432. Other courts point out that the line of demarcation between a jury's allowance of punitive damages and compensatory damages is too thin and exacting to apply coverage in the one case and deny coverage in the other. Such courts, *Lazenby* v. *Universal Underwriters Ins. Co.*, 214 Tenn. 639, 383 S.W. 2d 1 (1964), place much less emphasis on the punishment aspect of punitive damages and permit a recovery under language similar to that involved here. They point out that there is nothing to prevent the insurer from excluding the payment of punitive damages by appropriate policy provisions.

Our cases, *Kroger Grocery & Baking Co.* v. *Reeves*, 210 Ark. 178, 194 S.W. 2d 876 (1946), hold that there can be no recovery for punitive damages unless actual damages are suffered and assessed. Such damages have been defined as damages imposed by way of punishment and as those given or awarded in view of the supposed aggravation of the injury to the feelings of the plaintiff by the wanton or reckless conduct of the defendant, *Erwin* v. *Milligan*, 188 Ark. 658, 67 S.W. 2d 592 (1934). Punitive damages are awarded upon a showing of gross and wanton negligence, *Holmes* v. *Hollingsworth*, 234 Ark. 347, 352 S.W. 2d 96 (1961), and recovery thereof has been permitted against an employer for acts or admissions of an employee even though such acts were done without the employer's knowledge or authori-

zation and were not subsequently ratified by him, *Miller* v. *Blanton,* 213 Ark. 246, 210 S.W. 2d 293 (1948).

As we read the policy herein it agrees to pay on behalf of the insurer all sums which the insured shall become LEGALLY OBLIGATED TO PAY AS DAMAGES, because of bodily injuries sustained. When we consider that under our law, one cannot become legally obligated to pay punitive damages unless actual damages have been sustained and assessed, we find that punitive damages constitute a sum which the insured becomes legally obligated to pay as damages because of bodily injuries sustained, see *Carroway* v. *Johnson,* 245 S.C. 200, 139 S.E. 2d 908 (1965).

Neither can we find anything in the state's public policy that prevents an insurer from indemnifying its insured against punitive damages arising out of an accident, as distinguished from intentional torts. Since we have permitted punitive damages to be assessed against an employer under the doctrine of *respondeat superior* even in the absence of the employer's knowledge or authorization of the employee's acts, we can perceive of no good reason why an employer should be prohibited from insuring himself against such losses, since the losses are in effect a business loss—*i.e.,* a calculated risk of doing business.

It has been suggested that our decision herein should be controlled by *Arnold* v. *State,* 220 Ark. 25, 245 S.W. 2d 818 (1952), wherein we held that a surety on a sheriff's bond was not liable for punitive damages. We find that this case is not controlling because such bonds are executed pursuant to statute and cover only the damages set forth in the statute. See *Maryland Casualty Co.* v. *Baker,* 304 Ky. 296, 200 S.W. 2d 757 (1947).

Affirmed.

FOGLEMAN and JONES, JJ., dissent.

JOHN A. FOGLEMAN, Justice. While the precise question has not been specifically decided in this state, I must dissent from the majority opinion because the result is wholly inconsistent with the theory of punitive damages in Arkansas, and with other decisions by this court. This action places the burden of punishment on parties not guilty. While it may be true that the insurance company which pays punitive damages on an automobile liability policy is not really punished, this is so only when these losses can be passed on by the insurance company to its policyholders in the form of increased premiums.

Under the Arkansas theory allowing punitive damages, I do not see how they can be said to be sums which an insured becomes legally obligated to pay as damages because of bodily injuries sustained by another person or because of injury to or destruction of property. A review of some of the statements made by this court as to the nature and purposes of punitive damages will clearly show that the decision by the majority completely destroys the basic purpose for allowance of these damages.

The nature of both compensatory and punitive damages is treated in *Vogler v. O'Neal,* 226 Ark. 1007, 295 S.W. 2d 629. In that opinion we defined the sums which constituted damages because of bodily injuries. We quoted from *Coca-Cola Bottling Co. of Arkansas v. Adcox,* 189 Ark. 610, 74 S.W. 2d 771, as follows:

> "The *measure of damages for a physical injury* to the person may be broadly stated to be *such sum,* so far as it is susceptible of estimate in money, *as will compensate plaintiff for all losses,* subject to the limitations imposed by the doctrines of natural and proximate consequences, and of certainty, *which he has sustained by reason of the injury,* including

compensation for his pain and suffering, for his loss of time, for medical attendance and support during the period of his disablement, and for such permanent injury and continuing disability as he had sustained." (Emphasis mine.)

In treating punitive damages in the *Volger* case we recalled the announcement of a principle of law in *Miller v. Blanton*, 213 Ark. 246, 210 S.W. 2d 293, 3 A.L.R. 2d 203, when we adopted the language of the opinion in *Ross v. Clark*, 35 Ariz. 60, 274 P. 639, as follows:

"'*Punitive damages' are not intended to remunerate the injured party for the damages he may have sustained. They are not to compensate;* they are the penalty the law inflicts for gross, wanton, and culpable negligence, and are allowed as a warning or as an example to defendants and others. Because they are an example as to what the law will do for such conduct when it results in injury to the person or property of others, they are sometimes called exemplary damages." (Emphasis mine.)

In *Holmes* v. *Hollingsworth*, 234 Ark. 347, 352 S.W. 2d 96, we said:

"*  *  *  Punitive damages are not intended to remunerate the injured parties for the damages sustained.* Punitive damages are the penalty which the law inflicts on the guilty party, and are allowed as a warning or an example to others. What would be sufficient punitive damages against one person might be grossly excessive against another." (Emphasis mine.)

In *Erwin* v. *Milligan*, 188 Ark. 658, 67 S.W. 2d 592, it was said that punitive damages are given by way of punishment "in addition to compensation for the loss sustained." We have classified a judgment based upon

punitive damages as somewhat of a windfall for a plaintiff. *Dunaway* v. *Troutt,* 232 Ark. 613, 339 S.W. 2d 613.

It seems crystal clear to me from these cases that punitive damages are no part of damages "because of bodily injuries" or "because of injury to property."

The majority rely heavily upon the case of *Carroway* v. *Johnson,* 245 S.C. 200, 139 S.E. 2d 908 (1965). The result in that case is based substantially upon a statute which should be taken to be a statement of the public policy of South Carolina. Section 46-750.13, Code of Laws of South Carolina, (1962), requires that every policy of automobile liability insurance contain a provision "insuring the person * * * against loss from the liability imposed by law for damages * * *." The South Carolina court had held in *Laird* v. *Nationwide Ins. Co.,* 243 S.C. 388, 134 S.E. 2d 206 (1964) that one could not collect punitive damages under the uninsured motorist clause of his automobile insurance policy. The insurer in that case agreed to pay all sums which the insured should be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury. In its opinion the court made a clear distinction between the language of the statute hereinabove cited and the language of the uninsured motorist policy when it said:

"It is required by Section 46-750.13 of the Code that a liability insurance policy must insure 'against loss from the liability imposed by law,' while under the uninsured motorist coverage, which appears on said policy by endorsement, is for the benefit of the insured, and those qualifying as such, and does not insure 'against liability imposed by law,' but does obligate the insurer to pay the insured 'all sums which he shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle.' Clearly, the legislature, by using this differing language, recognized the dis-

tinction between liability coverage and the uninsured motorist endorsement."

That court rejected the idea that the uninsured motorist insurance covered punitive damages because there was no provision in the statutes which, either expressly or by implication, required that the uninsured motorist endorsement must insure against any and all liability, as was required in liability clauses. That court held in the *Laird* case, as I think we should, that the sums which one is legally entitled to recover as damages for bodily injury are compensatory damages only. It seems clear to me that the language of the policy in the *Carroway* case was construed as being in conformity with the South Carolina statute which required that liability insurance policies issued in that state insure against loss from any liability imposed by law for damages arising out of the ownership, maintenance, or use of a motor vehicle.

The majority also places reliance upon *Maryland Casualty Co.* v. *Baker,* 304 Ky. 296, 200 S.W. 2d 757 (1947). I cannot see how that case has any application whatever. It involved the requirements of a Kentucky statute with reference to the operation of taxicabs which the Kentucky court said must be read into the policy. Recovery was sought there for the assault of a passenger by a taxi driver. The decision hinged upon the statute. In treating the question, the Kentucky court said:

"This brings us to the question of whether there is any liability under the two policies. The determination of this question requires a construction of KRS 281.460 which is, in part, as follows: '(1) Before any authorization for the operation of a taxicab or city bus is granted by the division under KRS 281.450, the applicant shall file with the director a good and sufficient bond with adequate corporate surety, payable to the Commonwealth, binding the obligor *to pay any final judgment rend-*

*ered against him arising out of the death of or injury to any passenger, or loss of or damage to property while in transit, or death of or injury to other persons or damage to their property, or any act or omission connected with the operation of motor vehicles by the applicant.'*" [Emphasis mine.]

While the court did affirm a judgment which included punitive damages, these damages are not awarded there on the same basis as punitive damages are awarded in Arkansas. In Kentucky, punitive damages are considered compensatory. *Tennessee Central R. Co.* v. *Brasher's Guardian,* 29 Ky. Law 1277, 97 S.W. 349 (1906). Punitive damages may be awarded in that state for gross negligence. *Southern Railway Co.* v. *Barr's Administratrix,* 12 Ky. Law 1615, 55 S.W. 900 (1900). The court held in the case last cited that it would be error to instruct a jury that punitive damages might be given by way of punishment and to furnish an example to deter others from like practices. It has been said that the purpose of the law which authorizes the recovery of punitive or exemplary damages in Kentucky is to remunerate for the loss sustained, not to inflict a penalty. The jury is permitted in that state to give these damages on account of the nature of the injury, when the commission of the act complained of is accompanied with circumstances of aggravation. *Chiles* v. *Drake,* 2 Metcalfe 146, 74 American Decisions 406 (1859).

Perhaps the first court to meet the problem here presented was the Supreme Court of Colorado in *Universal Indemnity Ins. Co.* v. *Tenery,* 96 Colo. 10, 39 P. 2d 776 (1934). In treating the propriety of the recovery of exemplary damages from an automobile liability insurance carrier, that court said:

"* * * This award was primarily for the punishment of Callahan for his wrongful acts and as a warning to others. It was in no wise compensation

to the injured party for bodily injuries or actual loss occasioned by the negligence of Callahan. The insurance company did not participate in this wrong, and was under no contract to indemnify against such. In this particular matter the policy indemnifies against damages for bodily injuries, and nothing in addition is contracted for, and there is no further liability. The injured will not be allowed to collect from a nonparticipating party for a wrong against the public."

The reasoning and logic of that case which is directly parallel to this one seems to me to be irrefutable. It was followed in *Crull* v. *Gleb,* 382 S.W. 2d 17 (Mo. App. 1964). In that case the Missouri court said that since the chief purpose of punitive damages is to punish the offender and to serve as a deterrent to similar conduct by others, it seems only just that the burden of paying punitive damages should rest ultimately, as well as nominally, on the party who actually committed the wrong. That court also said:

"* * * Plaintiff would have already been made whole through his compensatory damages, and the insurance company, which had done no wrong, would be punished. There is no language in the policy that provides for the payment of judgments for punitive damages. The policy covers only damages for bodily injury and property damage sustained by any person. Punitive damages do not fall in this category. The $2,000 award of punitive damages to plaintiff was to punish defendant for his wrongful acts and as a warning to others. It was not to compensate plaintiff for bodily injury or property damage. The garnishee did not participate in the wrong, and was under no contract to indemnify as such.

* * * In order for the theory of punitive damages (i.e. punishment and deterrent) to work, the

delinquent driver must not be able to transfer his responsibility for punitive damages to others. * * *

Public policy against such coverage is based on the thesis that wrong-doing is discouraged by the imposition of personal punishment. If a person is able to insure himself against punishment, he gains a freedom inconsistent with the establishing of sanctions against such misconduct. It is undisputed that insurance against criminal fines would be void as violative of public policy. The same public policy should invalidate any insurance contract against civil punishment that punitive damages represent."

Other recent decisions following this line of reasoning are *Nicholson* v. *American Fire & Casualty Ins. Co.* 177 So. 2d 52 (Fla. App. 1965) and *Esmond* v. *Liscio,* (Allocatur refused) 209 Pa. Super. 200, 224 A. 2d 793 (1966).

Two of our United States Courts of Appeals have dealt with this matter in recent years and held punitive damages not recoverable on these policies. In treating virtually identical policy provisions in *Northwestern National Casualty Co.* v. *McNulty,* 307 F. 2d 432 (5th Cir. 1962) the court was dealing with Florida and Virginia law. It held that regardless of the construction to be placed on the contract, public policy would prevent the recovery of punitive damages from an automobile liability insurance carrier, even if the policy should provide specifically therefor. This finding was based on the fact that the function of punitive damages in the two states involved was for punishment and for deterrent. In a very thorough and comprehensive opinion, Judge Wisdom demonstrated that the purpose of punitive damages in both Florida and Virginia was for the protection of the public, punishment of the offender and warning and deterrent to others. These purposes are identical to the stated purposes in Arkansas. Judge Wisdom also

pointed out that the later cases in both states demonstrate that both states conform to the widely accepted basis for punitive damages for the purposes stated but not for compensation for the loss sustained by an injured party by reason of a tortfeasor's wrongdoing. Judge Wisdom carefully distinguished the legal background in states in which an insurer was held liable for punitive damages. In speaking of the public policy permitting the recovery of punitive damages, Judge Wisdom said:

> "* * * To make that policy useful and effective the delinquent driver must not be allowed to receive a windfall at the expense of the purchasers of insurance, transferring his responsibility for punitive damages to the very people—the driving public—to whom he is a menace. We are sympathetic with the innocent victim here; perhaps there is no such thing as money damages making him whole. But his interest in receiving non-compensatory damages is small compared with the public interest in lessening the toll of injury and death on the highways; and there is such a thing as a state policy to punish and deter by making the wrongdoer pay."

In *American Surety Co. of New York* v. *Gold*, 375 F. 2d 523 (10th Cir. 1966) in an opinion by Chief Judge Murrah, the court was dealing with Kansas law. Basing its opinion upon the premise that Kansas law embraced a general concept of punitive damages (as does Arkansas law) and upon the law treated in the *McNulty* case, that court forecast that the Kansas courts would hold that such a policy did not cover punitive damages and held in favor of the automobile liability insurance carrier.

The cases hereinabove cited and referred to involve clauses in automobile liability insurance policies identical, or virtually identical, with the clauses involved here and apply the laws of states which treat punitive damages in the same way as they are treated in Arkansas

courts and do not involve statutes which affect the result. With the exception of the Tennessee case cited in the majority opinion, cases reaching the result reached by the majority can be distinguished, as some of them are, in the cited cases.

I am particularly surprised at the result reached by the majority in view of the fact that this court has recognized the general policy as to punitive damages and denied recovery from a surety in *Arnold, Sheriff* v. *State*, 220 Ark. 25, 245 S.W. 2d 818. I humbly submit that the casual treatment given this case by the majority does not distinguish it and that its doctrine should be controlling here. I quote the language of the court in that opinion, and, in doing so, submit that its rationale cannot be harmonized with the result reached by the majority in this case. We said:

> "By cross-appeal Burton contends that the court erred in correcting its judgment to relieve the surety of liability for punitive damages. This modification was correct. Punitive damages are imposed to punish the wrongdoer, not to compensate the plaintiff for the officer's breach of duty. It is therefore generally held that the surety is not liable for punitive damages unless the statute so provides. *Yesel* v. *Watson*, 58 N.D. 524, 226 N.W. 624, 64 A.L.R. 929; cf. Rest., Security, § 181. Our statute does not so provide. Ark. Stat. Ann. 1947, § 12-1101."

This clearly shows that the reason for holding that the surety was not liable unless the statute so provided is that punitive damages for the officer's breach of duty in a case in which he is liable for compensatory damages for false imprisonment are not compensatory. The statute required of Sheriff Arnold a bond conditioned that he would well, truly and faithfully discharge and perform the duties of his office. The false imprisonment was clearly a breach of that bond, so there was just as much justification for recovery of the punitive dam-

ages from the surety as there is for recovery from appellant here.

The majority seems to find some support in the fact that the recovery of punitive damages was allowed in *Miller* v. *Blanton,* 213 Ark. 246, 210 S.W. 2d 293, against an employer for acts of an employee even though done without the employer's knowledge or authorization and not ratified by the employer. The majority seems to think that case involved an individual employer. That is not the case. The employer was a corporate defendant, Columbia Pictures Corporation. The authorities treated in the opinion in that case supporting the allowance of punitive damages all involved corporate employers. The support for the result reached by the majority in that case is the rule that a corporation, as distinguished from an individual, is liable in punitive damages for the malicious acts of its agent done within the scope of his employment. The rationale for this result is that corporations are artificial beings who can only act through agents and servants and unless corporations were held vicariously liable there would be no means by which corporations could ever suffer the penalty of punitive damages. This rule is sound and I see no reason why it should not be followed, but this case does not involve a corporation, and we do not have before us the question of whether or not a corporation which might be vicariously liable for malicious acts of its agents and servants can carry liability insurance for its own protection. The Pennsylvania court which considered the matter found that allowing one who is only vicariously liable for punitive damages to shift the burden to his insurer not to be in conflict with the holding that such damages were not recoverable on an automobile liability insurance policy containing language similar to that here. *Esmond* v. *Liscio,* 209 P. Super. 200, 224 A. 2d 793.

The fifth circuit pointed up serious problems which are posed by the result reached by the majority here. That court specifically mentioned three, which are:

"* * * (1) It would produce a serious conflict of interest between the insurer and the insured in settlement negotiations and in trial tactics. There was a conflict of interest in this case when the insurer refused an offer of settlement for $35,-000, again when the insurer said nothing to the insured before trial about punitive damages, and still again when the insurer elected to concede liability for compensatory damages. (2) There would be a conflict between the rule that in assessing punitive damages evidence of the financial standing of the defendant may be considered by the jury and the rule against referring to the defendant's insurance in the presence of the jury. (3) Fantastic results would be possible having no relation to making the injured party whole."

The problem that will give the most trouble in Arkansas is that with reference to evidence of the financial standing of the defendant. In cases in which punitive damages are sought (and I predict they will be sought in most automobile cases after this holding), what basis is to be used for the showing of the financial condition of the defendant? We have dealt with the problem in other backgrounds in such cases as *Dunaway* v. *Troutt*, 232 Ark. 615, 339 S.W. 2d 613, and *Life and Casualty Ins. Co. of Tennessee* v. *Padgett*, 241 Ark. 353, 407 S.W. 2d 728. Will there be a waiver of punitive damages when a defendant has automobile liability insurance similar to that found in the *Dunaway* case? Or is the alternative introduction of evidence that a defendant carries liability insurance and the policy limits thereon? Or will proof of financial worth by either party be found to be barred as was the case in the *Padgett* case?

While it may be of no particular concern to us, I cannot help but wonder whether automobile liability insurance carriers will have to have financial statements from their policyholders as a basis for fixing premium rates or whether the burden of insurance premiums will be

spread equally among the policyholders, from the virtually insolvent wage earner to the wealthy capitalist.

The *Padgett* case itself should keep us from adopting the rule of the majority opinion. There we said:

> "Padgett's attorney argues that regardless of the rule in the case of independent tortfeasors proof of financial worth should be allowed when the defendants are employer and employee. That argument is not sound. The reason for the rule—that one defendant should not be punished on the basis of another defendant's wealth—applies just as well to employers and employees as to others not standing in that relation. Hence the rule, as one might expect, is applied in master-servant cases."

The holding of this court in this case results in the punishment of others, perhaps many others, not only because of another's actions, but on the basis of another's wealth. This is inconsistent with what we said in the *Padgett* case.

I would reverse the judgment of the trial court.

JONES, J., joins in this dissent.