Honorable Don W. STEPHENS, not individually but in his capacity as Commissioner, Kentucky Department of Insurance; Kentucky Department of Insurance; Kentucky Fair Plan; Kentucky Joint Reinsurance Association, Appellants,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY and Harold C. Sumner, Appellees.

No. 93–SC–919–DG.

Supreme Court of Kentucky.

Jan. 19, 1995.

Rehearing Denied April 20, 1995.

Joseph L. Ardery, Jeffrey P. Stodghill, Brown, Todd & Heyburn, Louisville, Stephen Cox, Suetta W. Dickinson, Kentucky Dept. of Ins., Frankfort, for appellants.

Bruce F. Clark, Cheryl U. Lewis, Stites & Harbison, Frankfort, for appellees.

REYNOLDS, Justice.

At issue is the constitutionality of those amendments to the Kentucky FAIR (Fair Access to Insurance Requirements) Plan Statutes (KRS 304.35–010, *et seq.*) effected by House Bill 552 of the 1988 Kentucky General Assembly.

The insurance industry is a highly regulated one and operates within the framework of Kentucky's comprehensive, regulatory insurance code (KRS Chapter 304). It provides for three insurance residual market mechanisms. Of concern herein is the one designated as the FAIR Plan. It is mandated statutorily that insurers authorized to write property or casualty insurance on a direct basis in this state be a member of the FAIR Plan. Before the amendment, only insurers authorized to write property insurance, homeowner and farm owner policies were required to be members, as the Plan pertained only to property insurance coverage.

KRS 304.35–030(2) was amended to require the Insurance Commissioner, if he determined that a reasonable degree of competition failed to exist for any line of casualty or property insurance, to thereafter order the FAIR Plan's governing committee to provide a residual market for that line, unless an effective residual market mechanism was already functioning. Before the amendment, the FAIR Plan was statutorily empowered to provide residual markets only for property, homeowners and farm owners insurance.

The amendment of KRS 304.35–030(1) required any FAIR Plan losses to be covered by proportionate assessments against members as to each member's property and casualty premiums. Before the amendment, assessments were made in proportion with each member's property, homeowners and farm owners insurance premiums.

Before the amendment, the regulatory statutes provided for no surcharge, but, thereafter, if assessments were insufficient, the Insurance Commissioner was to order each FAIR Plan member to collect a $1.00 premium surcharge from the holder of each individual insurance policy during the subsequent twelve-month period. The effect of the amendment was to increase the number of lines of insurance for which the FAIR Plan could provide a residual market to support the operations of the existing and the future FAIR Plan.

The purpose of H.B. 552 was to allow the FAIR Plan's governing entity to expand FAIR Plan coverage to include other insurance lines when those lines of coverage encountered noncompetitive conditions in the market place. This amending legislation came in response to the reports arising from studies by a legislatively ordered Task Force. In order to accommodate such an expansion

of the FAIR Plan, the amendment augmented the Plan's membership to include all property and casualty insurance companies. Additionally, the Plan was authorized to write casualty insurance as well as to continue to write property insurance.

State Farm Mutual objected to the funding provisions for the FAIR Plan because under the amendment, if losses accrue, then assessments are to be made against all members of the Plan. Stated otherwise, the assessment base is not now limited to property insurance or to those lines of insurance written by the expanded Plan. Rather, the base is expanded to include all net direct written premiums by any member of the Kentucky FAIR Plan. State Farm Mutual, questionably, maintains that its automobile lines of insurance are now exposed to 40–50% of the burdens and losses that the FAIR Plan may sustain by virtue of its great volume of automobile insurance.

State Farm Mutual, as an issuer of automobile liability coverage, is required by KRS 304.13–151(5) to be a member of another residual market mechanism (the Kentucky Automobile Insurance Plan). The trial court held, as did the Court of Appeals, the amendments to the FAIR Plan unconstitutional because they are violative of the conformity and rationality requirements embodied in the due process and equal protection provisions of both the state and federal constitutions.

■ State Farm Mutual's primary complaint is that H.B. 552 requires it to support a residual market mechanism, the FAIR Plan, in which none of its lines of insurance can participate. Therefore, since its automobile insurance lines support the residual market mechanism of KRS 304.13–151, the result is that State Farm's automobile lines of insurance support two residual market mechanisms.

While we discern that the Auto Plan, when considered with the FAIR Plan, presents little, if any, problem of unfairness, both the trial court and the Court of Appeals held otherwise. The Court of Appeals, citing the trial court, stated:

In this case, we hold that it is not fair and uniform to have automobile lines of insurance and automobile insureds support and

subsidize property lines of insurance which participate in the FAIR Plan, when the lines of insurance written by State Farm Mutual must also support another residual market mechanism and stand no chance to benefit directly from the FAIR Plan.

Such comment errs because it distinctly fails to distinguish *automobile liability coverage, automobile property coverage* and *automobile collision coverage*. The Auto Plan writes absolutely no automobile property coverage and provides basic automobile liability coverage as required of all Kentucky vehicle owners. The cost of participation in the Auto Plan arises only from the automobile liability coverage based solely on the automobile liability premiums and not on a company's automobile property premiums.

■ The courts below have correctly noted the long-established principle that a strong presumption exists in favor of the statute's constitutionality. *Lovelace v. Commonwealth,* 285 Ky. 326, 147 S.W.2d 1029 (1941). Our courts are sensitive to the presumption of constitutionality, i.e., the rule that an act should be held valid unless it clearly offends the limitations and prohibitions of the Constitution. The one who questions the validity of an act bears the burden to sustain such contention. *Manning v. Sims,* 308 Ky. 587, 213 S.W.2d 577 (1948); *Revenue Cabinet v. Estate of Marshall,* Ky. App., 746 S.W.2d 408, 413 (1988). The appellant argues, with a degree of validity, that contrasting sales and use tax classifications have been legislatively enacted and upheld, which are not dissimilar to the two market mechanism plans referred to herein. *Delta Air Lines, Inc. v. Commonwealth, Revenue Cabinet,* Ky., 689 S.W.2d 14, 18 (1985). Certainly, the legislature has a great freedom of classification and the presumption of validity can be overcome by only the most explicit demonstration of hostility and oppressiveness against particular persons/classes. *Madden v. Kentucky,* 309 U.S. 83, 60 S.Ct. 406, 84 L.Ed. 590 (1940).

■ The state's inherent power to regulate insurance is broad. *Hartford Live Stock Ins. Co. v. Gibson,* 256 Ky. 338, 76 S.W.2d 17 (1934); *Maryland Casualty Co. v. Baker,* 304 Ky. 296, 200 S.W.2d 757, 761 (1947). This

same principle pertaining to mandatory residual market mechanisms for automobile liability insurance was upheld in *California State Automobile Ass'n. Inter–Insurance Bureau v. Maloney*, 341 U.S. 105, 71 S.Ct. 601, 95 L.Ed. 788 (1951). Therein, legislative judgment deemed necessary to the public welfare was applicable when the business of insurance was involved, it being a business to which the government has long had a special relation.

House Bill 552 is violative of neither federal nor state equal protection standards. This is a highly economic regulation and the subject need not rise to the same level of scrutiny that is involved in freedoms guaranteed by the Bill of Rights. *Dandridge v. Williams*, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970), holds that in the area of economics, a state does not violate the equal protection clause merely because the classifications made by its laws are imperfect. The Constitution is not offended simply because the classification is not made with mathematical nicety or because in practice it results in some inequality. The Kentucky courts have generally enunciated the same standard when applying equal protection principles to matters of economic regulation. *Chapman v. Eastern Coal Corporation*, Ky., 519 S.W.2d 390 (1975), provides that in the areas of economic and social welfare a state does not violate the equal protection clause merely because the classifications made by its laws are imperfect. The uniformity principle is not violated nor is the equal protection of laws violated if there is a reasonable basis or rational justification. When the objective is legitimate and the classification is rationally related to that objective, it is not constitutionally arbitrary. In this case, the result is that H.B. 552 may be upheld over an equal protection argument when a party is caused to bear a different economic burden or enjoys a different economic benefit. We held in *Waggoner v. Waggoner*, Ky., 846 S.W.2d 704, 708 (1992):

> Legislation will be upheld under equal protection principles of the federal and state constitutions if the law is rationally related to a legitimate objective. *McGowan v. State of Maryland*, 366 U.S. 420, 425–26, 81 S.Ct. 1101, 1104–05, 6 L.Ed.2d 393

(1961); *Kentucky Ass'n of Chiropractors, Inc. v. Jefferson County Medical Society*, Ky., 549 S.W.2d 817, 822 (1977). The constitutionality of a statute will be upheld if its classification is not arbitrary, or if it is founded upon *any* substantial distinction suggesting the necessity, or propriety, of such legislation. (Emphasis added.)

When economic and business rights are involved, rather than fundamental rights, substantive due process requires that a statute be rationally related to a legitimate state objective. *See Stratford v. State–House, Inc.* 542 F.Supp. 1008 (E.D.Ky.1982). *Kentucky Milk Marketing and Antimonopoly Com'n v. Kroger Company*, Ky., 691 S.W.2d 893 (1985), determines that Section 2 of the Kentucky Constitution is broad enough to embrace the traditional concepts of both due process of law and equal protection of the law. Unequal enforcement of the law, were it to rise to the level of conscious violation of the principle of uniformity, is prohibited. However, the question of reasonableness is one of degree and must be based on the facts of the particular case. *Pritchett v. Marshall*, Ky., 375 S.W.2d 253 (1963). The majority of this Court believes that House Bill 552, on its face, and its application is not violative of Section 2 of the Kentucky Constitution. The classification is legitimate if there is any reasonable basis for legislation that treats one class of people or their business differently from another, and the courts should uphold the legislative choice. *Alcoholic Beverage Control Bd. v. Taylor Drug Stores, Inc.*, Ky., 635 S.W.2d 319 (1982).

There has been no demonstration by State Farm that the statutes of the two plans, taken together, constitute a hostile and oppressive scheme against it or any particular class as required by *Madden, supra*. The insurer, State Farm, has the possibility under the Plan of adjusting its premium rates charged to regular customers to recoup some or all of the assessment that H.B. 552 may require them to pay. State Farm may obtain rate relief without going to the Kentucky Department of Insurance. KRS 304.13–051(5)(b); KAR 13:110. A state's authority to impose assessments against all property and casualty insurers, even though the deficit

to be repaid by the assessments was incurred by a residual market mechanism providing only automobile insurance, was upheld in *State Farm Mutual Auto. Ins. Co. v. State of New Jersey,* 124 N.J. 32, 590 A.2d 191 (1991). *See also Matter of Loans of New Jersey Property Liability Insurance Guaranty Association,* 124 N.J. 69, 590 A.2d 210 (1991). The New Jersey Act, which is not at substantial variance with the FAIR Plan, was held not to be facially unconstitutional and, as here, State Farm's entitlement to a fair rate of return is not negated. The insurer has the possibility of adjusting the premium rates they charge to recoup some or all of the assessments which the amendment subjects them to pay.

The case of *Hartford Accident & Indemnity Co. v. Ingram,* 290 N.C. 457, 226 S.E.2d 498 (1976), cited by both appellee and the courts below, is clearly and effectually distinguishable. *Ingram* did not involve monetary assessments and dealt with policy writing requirements in which an insurer had no expertise or experience.

The broad based assessment system, which may be considered as somewhat of a cross-subsidy, ultimately results in the economic effect of spreading costs based on virtually all property and casualty premiums by virtue of H.B. 552. Within the area of economic regulation, the Court may apply a minimal rational basis test and the Legislature can "reasonably" look to a broader category of automobile liability insurers (who also write automobile property insurance) as one source of the funds required to meet the financial obligations for the FAIR Plan residual market mechanism. The holding of *In the Matter of American Reliance Ins. Co.,* 251 N.J.Super. 541, 598 A.2d 1219 (1991), supports the simple and overriding fact that all insurers benefit from a stable insurance market. Therein, it was also held that an insurer could not fairly resist payment of assessments merely because it may not derive direct economic benefit from the manner in which the assessments are to be used. The collection system established by H.B. 552 satisfies the rationality standards inherent in federal constitutional protections and satisfies the similar test under Kentucky's constitutional provisions. *Delta, supra,* at 18.

KRS ch. 304 created the Kentucky Insurance Guaranty Association and while its constitutionality is not at issue, a similar rationale exists between the goal of its legislation, including broad assessments, and the rationale of assessments of the amended FAIR Plan.

■ In addition to expanded sources of funding there was initiated a surcharge of $1.00 per 12–month period upon automobile policy holders. All the additional assessments/surcharges are to be applied exclusively to the FAIR Plan debt. The surcharge applies with respect to all policy holders within the FAIR Plan. It is complained that some of State Farm's policy holders (because State Farm's insurance contracts were written/renewed every six months) were subjected to an unequal surcharge. A "double" surcharge was not permissible under the statute and was clarified by Commissioner's Bulletin 89–6. The surcharge remained in effect only from December 1988 to December 1, 1990. The constitutional principles hereinabove set forth applied equally to the assessment designated as "the surcharge." We do not suggest that an assessment of a surcharge can be imposed in an irrational manner. Again, however, in the area of economic legislation, the Legislature does not violate equal protection or due process because the classifications made by its statutes are imperfect. *Dandridge, supra.*

We hold that the FAIR Plan, as amended by House Bill 552, is constitutional and absolutely does not impose such a classification as to include persons within the class who are not rationally related to the goal of the legislation.

An issue of prejudgment interest presents itself, given the ruling upholding the constitutionality of House Bill 552. While the issue was raised in the circuit court by counterclaim, it was not addressed by virtue of State Farm's favorable ruling. In this case, it is not at all clear that interest on the assessment imposed could be recovered. There is no determination that the assessment is either liquidated or unliquidated and there is absent a specific statutory provision

or contract authorizing prejudgment interest. We have been cited no authority, inclusive of orders, regulations or stipulations, nor do we find such, authorizing prejudgment interest. This issue is, therefore, remanded to the trial court for a determination as to the award of prejudgment interest.

The opinions of the Court of Appeals and Franklin Circuit Court are reversed.

STEPHENS, C.J., and LAMBERT, LEIBSON and STUMBO, JJ., concur.

WINTERSHEIMER, J., dissents by separate opinion in which SPAIN, J., joins.

WINTERSHEIMER, Justice, dissenting.

I must respectfully dissent from the majority opinion because the expanded funding provisions required by the 1988 amendments to KRS 304.35–010, et seq., are unconstitutional violations of the due process and equal protection provisions of the state and federal constitutions.

The 1988 amendments, embodied in House Bill 552, established a new funding system which unfairly imposed financial burdens on automobile policyholders and automobile lines of insurance without any corresponding benefit from the new statutory funding mechanism. This type of shift in the financial burden for automobile policyholders and lines of insurance was arbitrary and capricious and violated due process and equal protection principles.

Section 2 of the Kentucky Constitution prohibits the exercise of arbitrary power even by the largest majority. *Ky. Milk Marketing v. Kroger*, Ky., 691 S.W.2d 893 (1985), stated in part that "whatever is essentially unjust and unequal or exceeds the reasonable and legitimate interest of the people is arbitrary."

The Court of Appeals properly affirmed the decision of the circuit court which found that both the assessment and the surcharge provisions of the expanded funding system did not achieve the rational relationship between the goals of the statute and the means selected to realize such goals.

The circuit court determined that the unconstitutionality of the amendment was even more apparent when considered under an equal protection analysis because automobile insurers must participate in two residual market mechanisms which result in an arbitrary classification and a denial of equal protection.

The original Kentucky FAIR Plan was established in 1968 by the Commissioner of Insurance following various legislative enactments by the United States Congress which had found that significant property losses arising from the urban riots of the 1960s resulted in many insurance underwriters terminating basic property insurance in some urban markets. The original plan provided basic fire insurance to many policyholders who could not find regular insurers willing to write such coverage. Although the original motive may have passed, there may still be a need for what is called a residual market mechanism which can provide insurance protection.

The real question is whether the surcharge and assessment system required by the 1988 amendments are a reasonable method of achieving what may be an appropriate governmental objective. As noted by the circuit court, the decision in *McGuffey v. Hall*, Ky., 557 S.W.2d 401 (1987), stated that there were certain due process limitations beyond which the legislature could not go. We must agree with the circuit court and the Court of Appeals that the 1988 amendments go beyond such limits. We must agree with the circuit court when it said in pertinent part that it is not fair and uniform to have automobile lines of insurance and automobile policyholders support and subsidize property lines of insurance which participate in a FAIR plan when there is no chance to benefit directly from the FAIR plan. The funding mechanism established by the 1988 amendment is really not similar to other insurance funding systems for similar plans.

SPAIN, J., joins in this dissent.